# JUNE, 1919

INTERNATIONAL TRAVELERS' ASSOCIATION V. ANNA C. BRANUM.

No. 2742. Decided June 4, 1919.

**1.—Venue—Contract—Public Policy.**

It is against public policy in this State to permit bargaining about depriving courts of jurisdiction expressly conferred by statute over particular causes of action and defenses. Eaton v. International Travelers' Asso. of Dallas, 136 S. W., 817, followed. (P. 548.)

**2.—Same—Accident Insurance.**

A provision in the policy issued by a mutual assessment accident insurance company and in its by-laws existing at the time the policy was issued, that action for loss thereon should be brought in Dallas County, the domicile of the company, in contravention of the statutes (Rev. Stats., art. 1830, sections 24, 29) giving jurisdiction and venue to other counties also, was contrary to public policy and without effect. (Pp. 546-548.)

**3.—Evidence—Declarations.**

Statements by a party undergoing suffering attributing his condition to an accidental injury, which he stated he had received two or three days previously and in another State, were hearsay, self-serving, and inadmissible to show the cause of his death, in an action on his policy of insurance against accident. City of Galveston v. Barbour, 62 Texas, 175; Hicks v. G. H. & S. A. Ry. Co., 71 S. W., 324; 72 S. W., 837, followed. (Pp. 548, 549.)

**4.—Practice in Supreme Court—Evidence—Rendition or Remand.**

The only testimony to show that death of insured was from accidental causes being self-serving hearsay declarations made by him, and opinions of medical experts solely based on such inadmissible testimony, and it being admitted that no further evidence could be produced on another trial, the Supreme Court, on reversing a recovery on a policy of accident insurance for error in admitting such evidence for plaintiff, renders judgment for defendant instead of remanding. (Pp. 549, 550.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Hamilton County.

Mrs. Branum sued the International Travelers' Assn., and had judgment. This was affirmed (169 S. W., 389) on appeal by defendant, who thereupon obtained writ of error.

*Eidson & Eidson,* and *Seay & Seay,* for plaintiff in error.

Where, in an application to join a mutual accident association, the member agrees that all suits shall be filed in Dallas County, and where the valid, existing by-laws of said association specify that the same shall be brought in Dallas County, Texas, and where the policy itself provides that suits thereon shall be brought in Dallas County, Texas,

it becomes a valid, existing contract as to venue between the parties thereto, and it is error for the court to overrule a plea based upon such facts and require the defendant to proceed to trial in another county than Dallas County, Texas.

In a suit for death benefits under an accident certificate, the declaration of deceased as to how he was injured, made to a trained nurse some three or four days after the injury and some four or five hundred miles from the place of the injury, is irrelevant, immaterial and hearsay, in that the issue is not to the extent of the injury, but in what manner the injuries were inflicted. Roth v. Travelers' Protective Association, 115 S. W., 31; Ft. Worth & Denver Railway v. Stone, 25 S. W., 808; M., K. & T. Ry. v. Sanders, 33 S. W., 245; I. & G. N. Ry. v. Boykin, 74 S. W., 93; Travelers' Protective Association v. Roth, 108 S. W., 1039.

*Dewey Langford* and *H. E. Christy,* for defendant in error.

A contract in contravention of statutory law, opposed to public policy and whereby one of the parties would obtain an unconscionable advantage of the beneficiary in the contract, is wholly void. Rev. Stats., art. 4744; Rev. Stats., art. 1830, subsec. 30; Eaton v. International Travelers' Association, 136 S. W., 817; Fuller's "Accident and Employers' Liability and Insurance," p. 437; Nute v. Hamilton, 72 Mass., 174; Matt. v. Iowa Mut. Aid Assn., 25 Am. St. R., 483; 25 Cyc., 909; May on Insurance, sec. 490; Railway Co. v. Musette, 26 S. W., 1075; 17 Am. & Eng. Ency. of Law, 1063.

A professional nurse who was called to attend a patient who subsequently died may testify to statements made by the patient, in regard to what produced or brought about his condition, the issue being whether his condition was due to accident or was the result of natural causes. Reynolds v. Railway Co., 107 S. W., 647; M., K. & T. Ry. v. Rose, 49 S. W., 133.

Where the evidence shows that deceased was only forty years old, not predisposed to any known disease, had never been sick or had a physician with him during the last fifteen years of his life, temperate in habits, possessed of fine health, strong and robust, but of an emotional nature, sympathetic and excitable, and who upon witnessing a fire across the street and seeing a crippled man burning to death therein, is immediately fatally stricken with apoplexy, and is haunted, distressed and agitated by the horror of the occurrence until his death the third day thereafter, and where no intervening cause can be found, the death is due to external, violent and accidental causes. International Travelers' Association v. Branum, 169 S. W., 389; Bryant v. Continental Cas. Co., 107 Texas, 582; Young v. Railway Mail Association, 126 Mo. App., 325, 103 S. W., 557; Hatch v. U. S. Casualty Co., 197 Mass., 101, 83 N. E., 398; Osburne v. Van Dyke, 113 Ia., 557, 85 N. W., 784; Alexander v. Bailey, 70 Tenn., 636; Read v. Pa. Ry.

Co., 44 N. J. L., 280; Brumitt v. Furness, 27 N. E., 651, 1 Ind. App., 401; Lathrop v. Taylor, 138 Mass., 466; 1 Corpus Juris, text and foot-notes, p. 395; So. Ry. v. Hill, 125 Ga., 354, 54 S. E., 113, 116 (citing 1 Cyc., p. 227); Cornwell v. Bloom. Assn., 163 Ill. App., 461, 467; New Amst. Cas. Co. v. Shields, 155 Fed., 54; Lehman v. Morgan's, etc., Co., 115 La., 1, 112 Am. St. 259; Hooper v. Stand. Acc., etc., Co., 166 Mo. App., 209, 148 S. W., 116; Phoenix Acc. Assn. v. Stiver, 42 Ind. App., 84, 84 N. E., 772; Aetna Life Insurance Co. v. Fitzgerald, 165 Ind., 317, 75 N. E., 261, 1 L. R. A. (N. S)., 112, 422, 6 Ann. Cas., 551; Delany v. Mod. Acc. Club, 121 Ia., 528, 97 N. W., 63, 63 L. R. A., 603; Jenkins v. Haw. Comm. Assn., 147 Ia., 113, 124 N. W., 199, 30 L. R. A. (N. S.), 1181; McGlinchey v. Cas. Co., 80 Me., 251; Em-ployers' Liab. Assurance Corp. v. Morrow, 143 Fed., 750, 74 C. C. A., 640; Continental Cas. Co. v. Lloyd, 73 N. E., 834; Wright v. Order of United Commercial Travelers, 174 S. W., 833; Sharpe v. Commer-cial Travelers' Mutual Association of America, 37 N. E., 353; National Benefit Association v. Grauman, 107 Ind., 288, 7 N. E., 223; Hall v. American Accident Association, 86 Wis., 518, 57 N. W., 366.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Defendant in error sued plaintiff in error to recover $5000, besides 12 per cent penalty and $1000 attorney's fees, upon a policy insuring Calvin C. Branum against accidental death in the sum of $5000. De-fendant in error was the wife of Calvin C. Branum and the beneficiary in the policy. Plaintiff in error was and is a mutual assessment acci-dent insurance company, organized under chapter 5 of title 71 of the Revised Statutes of Texas.

Defendant in error alleged the issuance of the insurance policy to Calvin C. Branum, and that while it was in force "the said Calvin C. Branum was the involuntary witness of an accidental fire in the city of Hot Springs, Ark., in which a helpless man was accidentally burned to death; that thereby the said Calvin C. Branum, who was of an ex-citable temperament, was greatly shocked, excited, and unnerved, so that a blood vessel in his head was ruptured, and death ensued as the proximate result thereof; . . . that at the time the said Calvin C. Branum witnessed said fire, or shortly thereafter, being in or near his room at the Great Northern Hotel in said city, he accidentally fell, his body striking the floor with great force, and thereby a blood vessel in his head was ruptured, and as the direct result thereof he died as before set out; that the death of the said Calvin C. Branum was the direct result of both the great excitement caused by the accidental fire and the burning of the helpless man and his accidental fall."

Plaintiff in error filed a plea of privilege to be sued in Dallas County, averring that the policy sued on, and the application therefor, and its by-laws stipulated that all causes of action on the policy should be brought in Dallas County, where its home office was located. The plea

of privilege omitted to state that none of the exceptions existed in this case to exclusive venue in the county of plaintiff in error's residence. The facts averred in the plea were admitted, and the plea was overruled.

The evidence showed that Calvin C. Branum was a man 40 years of age, in robust health, and of a sympathetic, excitable, and emotional nature. On May 27, 1913, Calvin C. Branum was registered as a guest at the Great Northern Hotel at Hot Springs, having been assigned to room 344. About 2:30 p. m., on May 27, 1913, Calvin C. Branum stated to one with whom he had business that he was going to his room to write some letters before train time, which was 5:30 p. m. About 3 p. m. on that day, a building burned across the street from the Great Northern Hotel, and in view of room 344, in which a paralytic was suffocated. About 3 or 4 o'clock in the afternoon of May 27, 1913, Calvin C. Branum called at the office of Dr. McCray, of Malvern, Ark., which is about 22 miles from Hot Springs, and complained of lassitude, headache, and impaired vision. About 6:30 o'clock and about 9:20 o'clock in the afternoon of May 28, 1913, Dr. J. C. Wallis was called to see Calvin C. Branum at Arkadelphia, Ark., which is 23 miles from Malvern, and found him nervous and restless and suffering from pains in the head. On May 30, 1913, Dr. W. C. Lackey found Mr. Branum at the Terminal Hotel in Fort Worth, with apoplexy or hemorrhage of the brain, from which he died about 11 o'clock that night, shortly after reaching his home at Walnut Springs.

Over the objection of plaintiff in error, defendant in error was permitted to testify that her husband told her on May 29th or May 30th that he saw a helpless man being burned to death at Hot Springs, and that in coming from the bath room he had fallen, and remembered nothing further until he came to himself on the bed in his room, and Mr. Branum's trained nurse at the Terminal Hotel at Fort Worth was also permitted to testify, over the objection of plaintiff in error, that about May 30th Mr. Branum had stated to her that he had started from his room into the bath room, when he saw a man being burned, and that when he regained consciousness he was on the floor and did not know how he got on the bed. The objection to the introduction of all this testimony was that it was hearsay and self-serving.

The issuance of the policy was proven, and that it was in force; but the above is all the evidence to prove that the death of the insured was an accidental death, save that Dr. Lackey testified that Mr. Branum mentioned nothing about a fall to him, though he did mention seeing a man burn to death at Hot Springs, and save the opinion of medical experts that shock and fright, together with a fall, or shock and fright alone, might produce a rupture of a blood vessel and cause death, and save the opinion of medical experts that Mr. Branum's death was so caused, on the hypothesis that he died from a ruptured blood vessel three days after having suffered such a shock, fright, and fall.

It is the contention of defendant in error that the venue of this suit

lay in the county of her residence, under article 4744, R. S., which provides that:

"Suits on policies may be instituted and prosecuted against any life insurance company, or accident insurance company, or life and accident, or health and accident, or life, health and accident insurance company, in the county where the home office of such company is located, or in the county where loss has occurred or where the policyholder or beneficiary instituting such suit resides."

Article 4744 was section 33 of the Act approved March 23, 1909, authorizing the incorporation, and providing for the regulation, of life, health, and accident insurance companies, of a very different character from that to which plaintiff in error belongs, and the article clearly relates only to the corporations authorized and regulated by that act. Hence article 4744 has no application to this suit.

Plaintiff in error contends that the venue lay exclusively in Dallas County, under the stipulations of the application, by-laws, and policy, as held in the case of International Travelers' Assn. v. Votaw, 197 S. W., 239. Plaintiff in error is a corporation organized "for the purpose of transacting business of accident insurance, upon the co-operative or mutual assessment plan, without capital stock." Article 4794, R. S. At the time its creation was authorized, and since, section 29 of article 1830, R. S., provided that suits against accident insurance companies might be commenced in the county in which the persons insured or any of them resided at the time of their death or injury, while section 24 authorized suit against any private corporation to be commenced in any county in which the cause of action or a part thereof arose, or in which such corporation had an agency or representative, or in which its principal office was situated. Plaintiff in error being an accident insurance company, though doing business on a co-operative or mutual assessment plan, without capital stock, section 29 applied to it, and, being a private corporation, section 24 likewise applied to it.

So that the real question presented by plaintiff in error's plea of privilege, which did not negative the exceptions of sections 29 and 24, is whether a statute giving a plaintiff the right to sue in several counties can be overridden by a contract undertaking to deprive him of that right. In the early case of Nute v. Hamilton Mut. Ins. Co., 6 Gray (Mass.), 174, it is announced in an opinion by Chief Justice Shaw that:

"The rules to determine in what courts and counties actions may be brought are fixed, upon considerations of general convenience and expediency, by general law; to allow them to be changed by the agreement of parties would disturb the symmetry of the law, and interfere with such convenience."

In the recent case of Nashau River Paper Co. v. Hammermill Paper Co., 223 Mass., 8, 111 N. E., 678, L. R. A., 1916D, 691, the court say with reference to the Nute case:

"That case, as has been pointed out, states a general principle which

has been adopted and prevails in all Federal courts, by reason of the binding decisions of the United States Supreme Court in Home Ins. Co. v. Morse, 20 Wall., 445, 22 L. Ed., 365, and Doyle v. Continental Ins. Co., 94 U. S., 535, 24 L. Ed., 148. The same rule prevails generally in all States where the question has arisen."

The note on pages 696 to 702 in L. R. A., 1916D, fully supports the court's statement. The Supreme Court of the United States concluded that there was no sound principle on which agreements like that before us could be upheld, saying:

"Every citizen is entitled to resort to all the courts of the country, and to invoke the protection which all the laws or all those courts may afford him. A man may not barter away his life, or his freedom, or his substantial rights. In a criminal case, he can not, as was held in Cancemi's case, 18 N. Y., 128, be tried in any other manner than by a jury of twelve men, although he consent in open court to be tried by a jury of eleven men. In a civil case he may submit his particular suit by his own consent to an arbitration, or to the decision of a single judge. So he may omit to exercise his right to remove his suit to a Federal tribunal, as often as he thinks fit, in each recurring case. In these aspects any citizen may no doubt waive the rights to which he may be entitled. He can not, however, bind himself in advance by an agreement, which may be specifically enforced, thus to forfeit his rights at all times and on all occasions, whenever the case may be presented." Insurance Co. v. Morse, 20 Wall., 451, 22 L. Ed., 365.

The United States Circuit Court of Appeals of the Sixth Circuit, in Mut. Reserve Fund Life Assn. v. Cleveland Woolen Mills, 82 Fed., 510, 27 C. C. A., 214, per Judge Lurton, said:

"Any stipulation between contracting parties distinguishing between the different courts of the country is contrary to public policy, and should not be enforced."

(1) We are convinced that it is utterly against public policy to permit bargaining in this State about depriving courts of jurisdiction, expressly conferred by statute, over particular causes of action and defenses. Eaton v. International Travelers' Assn. of Dallas, 136 S. W., 817. It follows that the stipulation for exclusive venue in Dallas County will not be enforced, and that the court did not err in overruling the plea asserting the privilege to be sued in that county alone.

(2) The assignments of error must be sustained which complain of the admission in evidence of the statements of the insured to his wife and to his trained nurse about having seen the burning man and about having fallen, two or three days previously, over the objection that such statements were hearsay and self-serving. The testimony was just as plainly an effort to prove the cause of the death by a self-serving narrative long after the event, in no sense res gestae, as was that mentioned and held inadmissible in Galveston v. Barbour, 62 Texas, 175, 50 Am. Rep., 519, wherein Judge Stayton said:

"There is no direct proof as to how the child received the injury of

which it died, but it is contended that he received a wound on his foot from a projecting iron bolt in the sidewalk on one of the streets of the city of Galveston.

"John M. Barbour, the father, and one of the plaintiffs, testified, over the objections of the appellant, that 'next morning he (the father) told him (the son) to come and show the object that had hurt him. From what he said, witness examined a bolt in the curbing of the sidewalk on the west side of Eighteenth Street, between Postoffice and Market street, being the first bolt in the curbing next to the alley, and between the alley and Hibbert's store, and found two drops of blood right by the bolt.' . . .

"The testimony of the father necessarily had upon the jury all the effect which his statement that his son told him he was injured by the bolt which he examined could have had, if made. The evident intention and purpose, which by the course pursued was fully accomplished, was to get before the jury the declaration of the child as to the manner in which he was injured. If the father, under the circumstances, could not legally have been permitted to narrate before the jury what his son had told him, then his testimony, which was intended to have, and must have had, with the jury, the same effect, ought not to have been admitted. Parties can not do by indirection what they could not do directly.

"The father testified to matters which occurred the next day after the child was hurt, and the matters to which he testified could in no sense be termed res gestae. This testimony was, in effect, a narration of what his son told him as to the cause of the injury which he received the day before, and should have been in so far excluded."

No one would claim that the statement to the trained nurse would be admissible, if it would be inadmissible had it been made to an attending physician. That similar statements, to a mother and to an attending physician, were objectionable, was determined in the case of Hicks v. G., H. & S. A. Ry. Co., 71 S. W., 324, when it is said:

"The declaration of the deceased, made to his mother after they arrived at Columbus, some time after the alleged accident, as to where and to what extent he was injured, and also the statements made by the deceased and his mother to Dr. Harrison as to how the injury occurred, and the character and extent of same, were not admissible in evidence. The declaration of the deceased that he was hurt, and his statement as to the location of the injury, made at the time it occurred, being res gestae, were admitted in evidence by the court. . . . The offered testimony as to the statements made by the deceased and the plaintiff to Dr. Harrison was hearsay, and inadmissible for any purpose."

The opinion of this court on writ of error in that case approves the above holding. Hicks v. G., H. & S. A. Ry. Co., 72 S. W., 837.

After excluding the incompetent evidence to statements of the insured, there is no evidence on which to base a finding that his death was

accidental, and counsel for defendant in error frankly admits in this court that no further evidence can be adduced on another trial.

In view of this admission, and our conclusions as to the effect of the competent evidence, it is ordered that the judgments of the District Court and of the Court of Civil Appeals be reversed, and that judgment be here rendered for plaintiff in error.

*Reversed and rendered.*

Associate Justice Hawkins disqualified and not sitting.