Banco de Ponce, demandante y apelado, *v.* Celestino Iriarte, Adolfo García Veve y Juan Pedrosa, demandados y apelantes.

Núm. 8379.—*Sometido:* Febrero 6, 1942. *Resuelto:* Marzo 4, 1942.

*F. R. Aponte,* abogado de los apelantes; *Vicente Zayas Pizarro* y *M. Orraca Torres,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

El Banco de Ponce radicó en la Corte de Distrito de Ponce una demanda en cobro de dos pagarés otorgados por los demandados mancomunada y solidariamente y en los que ellos se sometieron expresamente a los tribunales de Ponce. El 24 de marzo de 1941 los demandados solicitaron de la corte inferior el traslado de la causa a la Corte de Distrito de Humacao, por ser este distrito el de la residencia del codemandado Adolfo García Veve y tratarse de una acción personal. Esta moción fué declarada sin lugar el 22 de abril del mismo año por el fundamento de que los demandados se habían sometido a las cortes de Ponce, y los demandados apelaron de dicha resolución para ante esta corte.

Después de haber sido declarada en parte con lugar una moción eliminatoria y de haber radicado el demandante una demanda enmendada, los demandados, al contestar la misma, radicaron otra moción solicitando el traslado de la causa para la Corte de Distrito de Humacao, basada ésta en que la conveniencia de los testigos de los demandados y los fines

de la justicia se benefician con dicho traslado. Oídas las partes, esta moción fué declarada sin lugar por la corte inferior y de esta resolución también apelaron los demandados para ante esta corte, habiéndose tramitado las dos apelaciones a que nos hemos referido como una sola.

Los apelantes como fundamento de sus recursos imputan a la corte inferior la comisión de dos errores al declarar sin lugar el traslado fundándose en la convención firmada por los apelantes al otorgar los pagarés objeto de litigio y al resolver que existiendo tal convención no procede el traslado aunque la conveniencia de los testigos y los fines de la justicia se beneficien con el cambio. Consideremos el primer error.

■■ En los pagarés objeto de esta acción, los demandados hicieron constar lo siguiente: "Nos sometemos expresamente a los tribunales de Ponce." Los artículos 76 y 77 del Código de Enjuiciamiento Civil (ed. 1933), en su parte pertinente, dicen así:

"Artículo 76.—Con arreglo a su jurisdicción, una corte conocerá de los pleitos a que dé origen el ejercicio de las acciones de todas clases, cuando las partes hubieren convenido en someter dicho pleito a la decisión de tal corte.

"Artículo 77.—(Enmendado según la Ley Núm. 14 de 1933, pág. 213.) Se entenderá hecha la sumisión:

"1. Por convenio escrito de las partes."

Desde el año 1900 esta Corte Suprema, en el caso de *Garcés* v. *Franceschi,* 1 S.P.R. 84, explicó la distinción que hay entre jurisdicción y competencia, diciendo:

"Por jurisdicción se entiende la potestad de que se hallan investidos los Jueces y Tribunales para administrar justicia; y por competencia, la facultad que tienen para conocer de ciertos negocios ya por la naturaleza de las cosas, bien por razón de las personas."

En el año 1911, aplicando los artículos 76 y 77 del Código de Enjuiciamiento Civil, supra, en el caso de *Bayron et al.* v. *García et al.,* 17 D.P.R. 538, después de citar el de *Garcés,* se dijo por voz del entonces Juez Presidente, Sr. Hernández:

" 'La jurisdicción, como dice el ilustrado comentarista Manresa y Navarro, emana siempre de la ley, directa e inmediatamente; nadie puede ejercerla sin que la ley le haya concedido este poder; sólo tienen jurisdicción, sólo pueden administrar justicia las personas a quienes les ha sido conferido este poder con arreglo a la ley; mas la competencia de un juez para conocer de un negocio, aunque se derive también de la ley, unas veces trae de ella su origen directa, inmediata y exclusivamente, y otras lo tiene de la voluntad de las partes. El primer caso forma la regla general y el segundo las excepciones.'

"De aquí que la jurisdicción no puede prorrogarse; lo contrario sucede con la competencia. Si una corte por precepto de la ley carece de jurisdicción para conocer de una acción, el consentimiento de las partes nunca podrá darle esa jurisdicción.

"Por el contrario, si una corte carece de competencia para conocer de una acción, adquiere esa competencia siempre que tenga jurisdicción para conocer de dicha acción, por convenio o sumisión de las partes, según los artículos 76 y 77 del Código de Enjuiciamiento Civil."

Tres años más tarde, en el caso de *Hernáiz, Targa & Co.* v. *Vivas,* 20 D.P.R. 106, 114, este Tribunal hizo constar que lo que introducía alguna confusión en estas materias de sumisión y de traslado, era el hecho de que los artículos 76 y 77 del Código de Enjuiciamiento Civil, supra, son de origen distinto a la totalidad del código; pero no fué hasta el año 1916 y en el caso de *Gómez* v. *Toro,* 23 D.P.R. 642, que por voz de su entonces Juez Asociado Sr. Del Toro, y después de hacerse un análisis comparado de dichos artículos con los artículos 56, 57 y 58 de la antigua Ley de Enjuiciamiento Civil y de citarse más ampliamente de los Comentarios de Manresa y de la jurisprudencia americana, se estableció la siguiente doctrina:

"Hemos estudiado las decisiones citadas y creemos que no son aplicables. El legislador portorriqueño quiso preservar y preservó en el nuevo Código de Enjuiciamiento Civil el principio del antiguo sobre sumisión previa de las partes. Dicho precepto es claro y fué repetidamente interpretado, como hemos visto, en el sentido de que la sumisión previa es un pacto lícito y una vez que se hace en legal forma obliga a la persona que se somete y aun a sus herederos. Tal

interpretación era perfectamente entendida y practicada en Puerto Rico y no es contraria a la honestidad, ni a las buenas costumbres, ni a la política pública. Al parecer la única diferencia que existe entre la jurisprudencia americana y la española consiste en que según la primera es necesario que se inicie el pleito para que pueda la parte someterse, y según la segunda, tal sumisión puede acordarse al celebrarse el contrato que pueda dar origen al pleito. El principio de la sumisión voluntaria, que es lo esencial a nuestro juicio, se reconoce, pues, por ambas jurisprudencias. De ahí que sin dificultad alguna, no obstante ser nuestro Código de Enjuiciamiento Civil actual casi en su totalidad de origen americano, puedan subsistir sus artículos 76 y 77 con su interpretación antigua. No se viola con ello ningún derecho fundamental reconocido por las leyes existentes, y se cumple la intención de la legislatura que fué sin duda la de preservar una forma contractual bien entendida y practicada por muchos años en esta isla.''

El caso de *Gómez v. Toro,* supra, ha sido citado con aprobación en *Martorell et al. v. J. Ochoa Hno.,* 25 D.P.R. 759, 775; *Agenjo y Santiago et al. v. Santiago et al.,* 26 D.P.R. 713; *Mitjans v. Mitjans, hoy su Sucesión,* 26 D.P.R. 803; *Körber & Cía. v. Colón et al.,* 30 D.P.R. 772; *Sucrs. de Abarca v. Nones et al.,* 30 D.P.R. 866, 870; *Font v. Castro,* 33 D.P.R. 784, y *Sucrs. de J. Fernández, S. en C., v. Zalduondo,* 40 D.P.R. 339.

En el caso de *Körber & Cía. v. Colón et al.,* supra, los apelantes alegaron expresamente que la decisión en el caso de *Gómez v. Toro,* era errónea y solicitaron su revocación y la corte ratificó la doctrina diciendo:

''El caso de *Gómez v. Toro,* supra, ha sido citado con aprobación en varias ocasiones por este mismo tribunal. Véase especialmente el caso de *Mitjans v. Mitjans, hoy su Sucesión,* 26 D.P.R. 803. En el curso de la opinión se dijo:

'' 'Esta Corte Suprema ha resuelto varias veces que la renuncia del fuero del domicilio es una condición lícita en los contratos tanto como una de las costumbres locales bien establecidas, sancionada por el orden público y sostenida por la uniforme corriente de la jurisprudencia.' ''

Y ahora, 26 años después de establecida esta doctrina, de nuevo se nos pide por los apelantes que la revoquemos alegando como fundamento que ella se opone a la política pública y que por este motivo ha sido descartada por *todos* los tribunales americanos.

Si bien el argumento no necesitaría ulterior consideración debido al hecho de que la doctrina establecida por este tribunal lo fué a base de la distinción bien definida hecha en los casos citados, en cuanto al origen español de los artículos 76 y 77 del Código de Enjuiciamiento Civil y la aceptación por este tribunal de la licitud de la sumisión contractual de acuerdo con los conceptos ''jurisdicción y competencia'', no está de más que demostremos que la pretendida unanimidad de la jurisprudencia americana sobre la materia, alegada por los apelantes, no existe y que, por el contrario, son muchos los casos en que se ha sostenido la validez de la sumisión contractual. Examinemos ligeramente la jurisprudencia.

En Wisconsin, la Corte Suprema del Estado sostuvo la validez de tal sumisión en *State* v. *Luchsinger,* 286 N. W. 72; en Indiana, la Corte de Apelaciones falló en igual sentido, en *Terre Haute Brewing Co.* v. *Ward,* 102 N. E. 395; en Alabama se resolvió lo mismo en *Chandler* v. *Hardeman,* 68 So. 525; en Washington, está la decisión del Tribunal Supremo en *State* v. *Kings County Super. Co.,* 112 P. 927, sosteniendo que las partes pueden pactar con respecto a qué corte debe conocer de determinado caso; en el mismo Estado de Massachusetts, donde puede decirse que nació la doctrina opuesta, o sea, la regla que invocan los apelantes, establecida en los casos de *Nute* v. *Hamilton Mut. Ins. Co.,* 6 Gray (Mass.) 174, y *Hall* v. *People's Mut. Ins. Co.,* 6 Gray (Mass.) 185, la Corte Suprema se negó a seguir dicha regla en los casos de *Daley* v. *People's Bldg., Loan & Savings Ass'n.,* 59 N. E. 452, y *Mittenthal* v. *Mascagni,* 66 N. E. 425, sosteniendo en su lugar la validez de una sumisión contractual, y de hecho, si no se revocó el caso de *Nute* v. *Hamilton*

*Mut. Ins. Co.*, supra, se hace un esfuerzo por distinguirlo. Finalmente, en Texas, aunque el Tribunal Supremo resolvió en *International Travelers' Ass'n.* v. *Branum*, 212 S. W. 630, que la sumisión contractual, antes de que el pleito haya sido iniciado, es nula, por ser contraria a la política pública ha habido manifestaciones de las Cortes de Apelaciones Civiles de Dallas y de Amarillo que están en conflicto con dicha decisión. Así, por ejemplo, en *Texas Moline Plow Co.* v. *Biggerstaff*, (Tex.) 185 S. W. 341, la Corte de Apelaciones Civiles de Amarillo, después de basar su decisión en un estatuto que consideró aplicable, añadió:

"Además, la moción de traslado estaba bien fundada por otro motivo: el párrafo arriba citado fijó, por acuerdo de las partes, al condado de Dallas como el sitio donde se ventilaría cualquier pleito que surgiera de un quebrantamiento del contrato. Tal pacto ha sido declarado válido en este Estado (*Ft. Worth Board of Trade* v. *Cooke*, 6 Tex. Civ. App. 324, 25 S. W. 330), y pactos similares han sido sostenidos por la mayoría de las autoridades en otras jurisdicciones (*State ex rel. Schwabacher Bros. & Co.* v. *Superior Court*, 61 Wash. 681, 112 Pac. 927, Ann. Cas. 1912C, 815 y nota; *Williams* v. *Branning*, 154 N. C. 205, 70 S. E. 290, 47 L.R.A. (N.S.) 351 y nota)."

Es cierto que esta decisión antecede a la del Tribunal Supremo en *International Traveler's Ass'n.* v. *Branum*, supra, pero aún después de dicha decisión, la Corte de Apelaciones Civiles de Dallas, en *Pavlidis* v. *Bishop & Babcock Sales Co.*, (Tex.), 41 S. W. (2d) 294, volvió a insistir en la doctrina de que la sumisión contractual es válida, diciendo:

"No podemos estar de acuerdo con la última indicación: esto es, que no se puede fijar el lugar del juicio por contrato. El derecho a ser demandado en el condado donde uno reside es un privilegio que puede ser renunciado por acuerdo de las partes, y a menos que tal acuerdo fijando el lugar del juicio vaya en contra de un estatuto, es, en nuestra opinión, válido y puede ser puesto en vigor; es más, la competencia fijada por la sección 5ta. del art. 1995, descansa totalmente sobre una base contractual (casos citados)."

La unanimidad en las decisiones reclamada por los apelantes en apoyo de su contención, no existe. Hay un abierto con-

flicto en las autoridades, y aunque podría admitirse que la mayoría de las jurisdicciones siguen la doctrina que declara nula cualquier sumisión contráctual con respecto a pleitos no iniciados, también es cierto que en muchos casos se sostiene la validez de tales pactos. Como dijo el Juez Holmes en el caso de *Daley* v. *People's Bldg., Loan and Savings Ass'n.*, 178 Mass. 13, 59 N. E. 452:

"Una de las condiciones es que 'cualquier acción traída contra esta corporación por un accionista, será incoada. . . en el Condado de Ontario, Estado de New York'. Somos de opinión que esta condición debe ser puesta en vigor. No deseamos recovar el caso de *Nute* v. *Insurance Co.*, 6 Gray 174, pero es obvio que esa decisión no fué terminante, y creemos que no debe ser aplicada al caso de autos. . . La fraseología usada aquí es distinta a la usada en *Nute* v. *Insurance Co.*, y más fuerte. Fué usada con la intención clara de condicionar el contrato, y somos de opinión que efectivamente lo condiciona. No se indicó en *Nute* v. *Insurance Co.* que cuando un contrato está condicionado en tal forma y dicha condición es válida, haya alguna dificultad técnica que impida poner en vigor dicha condición, alegándola como impedimento contra una acción traída en otro sitio. . . Pero objeciones de esta índole pueden ser presentadas de tal manera que parezcan más graves de lo que son. Las cortes están menos inclinadas, cada día a intervenir con el derecho de las partes a otorgar los contratos que deseen, mientras ellas sólo afecten su propio bienestar y no el de alguna otra persona."

No existe, como hemos visto, unanimidad en la jurisprudencia americana, sino que en muchas jurisdicciones se ha aplicado la misma doctrina establecida por este tribunal en el caso de *Gómez* v. *Toro*, supra, a base de la interpretación de preceptos similares en la legislación española. No vemos razón alguna para variar dicha doctrina, bien conocida y aceptada por la profesión desde hace más de 26 años. Como se dijo, aplicando la regla de "stare decisis", en el caso de *García Fernández, ex parte*, 44 D.P.R. 296: "Una vez que una cuestión ha sido deliberadamente resuelta luego de argumentos solemnes, no debe ser variada, a menos que sea tan manifiestamente errónea que no pueda sostenerse sin violentar la razón y la justicia".

Los apelantes no nos han convencido de que la doctrina de la previa sumisión contractual a la competencia de una corte de jurisdicción general sea tan manifiestamente errónea que no pueda sostenerse sin violación a la razón y la justicia. Por el contrario, somos de opinión que variar dicha doctrina después de, tantos años de establecida y conocida por todos podría afectar muchos contratos otorgados tomando en consideración su existencia. No se cometió el primer error.

■■ Tampoco el segundo, pues aparece de los autos que la corte inferior al denegar el traslado solicitado por los demandados por conveniencia de sus testigos, tomó en consideración los *affidavits* de una y otra parte y si bien hizo constar que el propio pacto de sumisión era un obstáculo para el traslado, en última instancia lo que resolvió fué lo siguiente:

"El motivo de la solicitud de traslado es el de que los testigos mencionados no están obligados a venir a la Corte de Distrito de Ponce a dar su testimonio, pero que estarían dispuestos a trasladarse a la Corte de Distrito de Humacao, y que si fueran obligados a comparecer en la Corte de Distrito de Ponce se obligaría a los demandados a someter su caso mediante deposiciones. Si eso constituye una inconveniencia para los testigos deberíamos decir que la conveniencia de los testigos de una sola parte no debe considerarse sino la conveniencia de los testigos de demandante y demandados, y la inconveniencia de los testigos será igual tanto para los de la parte actora como para la parte demandada; en tales circunstancias el motivo para el traslado no es en este caso válido. (*Rowland* v. *Britton*, 14 P. 2d. 116 (Cal.); *Leopold* v. *Livermore*, 197 P. 778, 115 Wash. 481.)"

De manera, que lo que hizo la corte inferior fué pesar las conveniencias de los testigos de ambas partes y el bien de la justicia, y en el ejercicio de su discreción denegó el traslado. Ya hemos resuelto en *Sánchez* v. *Atlas Commercial Company*, 27 D.P.R. 566 y *Abraham* v. *Piereschi*, 36 D.P.R. 58, que la facultad concedida a las cortes por el artículo 83 del Código de Enjuiciamiento Civil para cambiar el lugar del juicio cuando la conveniencia de los testigos y los fines

de la justicia se benefician es discrecional y que en casos de traslado a base de *affidavits* contradictorios esta corte no intervendrá con la discreción ejercitada por la corte inferior y no se revocará su resolución a menos que se demuestre un abuso de discreción. No estamos, convencidos de que esto haya ocurrido en este caso, y por tanto, *deben desestimarse ambos recursos y confirmarse las resoluciones apeladas.*