**CRUSE v. UNION CENTRAL LIFE INS. CO**
Civil Action No. 418.

District Court, E. D. Texas, Beaumont Division.

Feb. 8, 1945.

O'Fiel & O'Fiel, of Beaumont, Tex., for plaintiff.

Locke, Locke, Dyer & Purnell, of Dallas, Tex., and Orgain, Carroll & Bell, of Beaumont, Tex., for defendant.

HANNAY, District Judge.

Plaintiff brought this suit alleging that her husband, Henry Elton Cruse, deceased, a practicing attorney of Beaumont, Texas, had a policy of double indemnity insurance in effect at the time of his death on June 26, 1941, with the defendant company, in which she was named as sole beneficiary. The face amount of the policy, to-wit:

$10,000, was paid plaintiff without prejudice to plaintiff's right to maintain suit for double indemnity.

The deceased met his death as a result of five or six pistol wounds from a .38 caliber double action Smith & Wesson revolver. This revolver had been in the exclusive possession of the deceased for some time prior to his death. On the morning of the fatal day, deceased came to his office in the Goodhue Building, located on Pearl Street in Beaumont, Texas, alone, although he was usually accompanied by his wife, who also maintained an office in his suite of offices and assisted him in his work. Soon after his arrival, he requested his secretary to go to the ground floor of the Goodhue Building to purchase for him some cigars. The secretary testified that shortly thereafter, while returning from the mission above mentioned, she heard pistol shots issuing from deceased's private office, and that she immediately hastened into said office, and there found him alone and lying on the floor; that his desk chair was over-turned, and that he was bleeding from wounds in his chest, and that he was then holding his revolver in his right hand, and with his right thumb was attempting to draw back the hammer, while with his right forefinger he was pulling the trigger. He was right handed.

The range of the bullets indicates that they were fired at a time when deceased was sitting in his office desk chair. The condition of deceased's clothes and the powder marks on his body, and particularly the powder burn in the web between his left thumb and left forefinger, show that the revolver was fired at close range. An autopsy disclosed that all of the bullets entered deceased's body within an area 2½ by 4 inches, in his left breast, in and near the left ventricle of his heart.

Deceased undoubtedly met his death either because of an accident, or was murdered, or committed suicide. Plaintiff does not contend that deceased met his death as a result of an accident. The question then is—"Was deceased murdered, or did he commit suicide?"

In order to find that deceased was killed, it is necessary to assume that such killing was done by some unusually agile person who, in broad open day light, made entrance, unseen, from the roof of a nearby building, facing on a prominent city street, through a window and into deceased's office, and there obtained from deceased—a large, strong and healthy man—possession of deceased's revolver, and then expertly shot him six times at an unusual angle, without leaving any evidence of a struggle, and then departed unnoticed, leaving the death weapon in the right hand of deceased.

The important issue in the case is whether it was physically possible for the deceased to have shot himself in or near the heart five or six times. On this point the medical testimony is in sharp conflict. The fact that deceased lived until after reaching the hospital, a matter of more than thirty minutes, is of great significance in the solution of this problem. It is in testimony that deceased was, up until the time of his death, a heavy drinker of intoxicating liquors, and was, for some months prior to his death, extremely despondent.

The definition of an accident, as contained in the clause in the insurance policy in question, pertaining to double indemnity for death by accidental means, reads as follows:

"Definition of Accident. The Double Indemnity Benefit shall be payable only if the death of the insured shall result directly, independently, and exclusively of all other causes, from bodily injury effected solely through accidental, external and violent means, and only if such death shall occur within ninety days after the date of such injury; provided that death occurring either as a result of military or naval service in time of war or relief service in connection therewith, or as a result of participation by the insured in an aeronautic ascension or submarine descent, or as a result directly or indirectly of any bodily or mental disease or infirmity or of bacterial infection other than infection occurring simultaneously with and in consequence of an accidental wound, or as a result of any kind of poisoning or of inhaling any kind of gas, voluntarily or involuntarily, or as a result directly or indirectly of committing an assault or a felony, *or by suicide while sane or insane,* or as the result directly or indirectly of injuries intentionally inflicted by the insured is not an accident hereby insured against."

In cases of this character, the burden of proof is upon the claimant to show that death was within the terms of the pol-

icy. That is the rule set out in Mutual Life Insurance Co. of New York v. Sargent, by the Fifth Circuit of Appeals, 51 F.2d 4, decided on July 9, 1931. To the same effect, see New York Life Insurance Co. v. Trimble, 69 F.2d 849, decided on April 6, 1934, opinion by Judge Bryan; Love v. New York Life Insurance Co., 64 F.2d 829; Smith v. New York Life Insurance Co., 31 F.2d 281, opinion by Judge Bryan; and the fairly recent case of Mullaney v. Prudential Insurance Co. of North America, 125 F.2d 900, opinion by Judge Holmes. An opinion of like import was written by Judge Hutcheson in the case of Scales v. Prudential Insurance Co. of America, 109 F.2d 119. A reading of the above enumerated cases shows that the Fifth Circuit has consistently adhered to the rule with reference to the burden of proof, as above stated.

The rule in Texas in this type of case is likewise similar. Judge Sharp, speaking for the Commission of Appeals, in International Travelers' Ass'n v. Bettis, 120 Tex. 67, 35 S.W.2d 1040, 1044, said: "We are of the opinion that the burden rests upon the plaintiff to show that her cause of action does not fall within the excepting clause." To the same effect is the case of International Travelers' Ass'n v. Branum, 109 Tex. 543, 212 S.W. 630; Travelers Insurance Co. v. Harris, Tex.Com.App., 212 S.W. 933; Maryland Casualty Co. v. Hudgins, 97 Tex. 124, 76 S.W. 745, 64 L.R.A. 349, 104 Am.St.Rep. 857, 1 Ann. Cas. 252, and numerous other cases cited as authority in the above mentioned cases. Judge Sharp, in the Bettis case, supra, also held "A presumption of a fact cannot rest upon a fact presumed."

■ Another question of evidence mentioned in the Sargent case, supra, is important in the consideration of the instant case, and that is this—the deceased's secretary, who was the first person to see him after the shooting, testified unequivocably as to the position and actions of the deceased immediately after the report of the shots was heard. Her testimony to a plain and simple fact stands uncontradicted, and not impeached or discredited in any way. See also, M. H. Thomas & Co. v. Hawthorne, Tex.Civ.App., 245 S.W. 966, 973; Chesapeake & Ohio R. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983; and Still v. Stevens, Tex.Civ.App., 13 S.W.2d 956.

■ Upon a consideration of the facts and law applicable to this case, I am firmly of the opinion that Mr. Cruse met his death as a result of his own intentional act. It therefore follows that judgment herein should be and is in favor of the defendant, Union Central Life Insurance Company, and against the plaintiff, Mary Foley Cruse.

The Clerk will notify counsel, and request counsel for the defendant to prepare and submit to the opposing counsel and the Court, judgment in accordance with this opinion.