**In re Kimberly CALDERON.**

**No. 12–02–00228–CV.**

Court of Appeals of Texas, Tyler.

Oct. 23, 2002.

---

**8.** TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981) (emphasis added).

**9.** U.S. CONST. amends. V, XIV.

Pascual Madrigal, San Antonio, for relator.

Carole W. Clark, pro se.

John E. Freeman, Deborah J. Race, Tyler, for real party in interest.

Panel consisted of GOHMERT, JR., C.J., WORTHEN, J., and GRIFFITH, J.

LOUIS B. GOHMERT, JR., Chief Justice.

Kimberly Calderon ("Calderon") brings this petition for writ of mandamus complaining of an order denying her motion to transfer venue filed pursuant to section 155.201 of the Texas Family Code. We conditionally grant the writ.

## BACKGROUND

David Holiday ("Holiday") and Calderon were divorced in 1993 in Smith County, Texas. Two children were born to the marriage. Since 1998, the children have resided with Calderon in San Antonio, Texas, which is in Bexar County. The children are both minors, and the 321st District Court of Smith County has continuing, exclusive jurisdiction over matters relating to the children.[1]

On April 17, 2000, Holiday and Calderon entered into a mediated settlement agreement ("MSA") to resolve ongoing litigation between them. The M.S.A. primarily relates to their parental rights and duties, but also provides that jurisdiction will remain in Smith County, Texas for three years. On October 24, 2000, the trial court signed an order approving the M.S.A. and incorporating its terms. The order contains the following provision: "The Court further finds that jurisdiction and venue shall remain in Smith County, Texas for a period of three (3) years from the date of entry of this Order." The order also states that the residence of the minor children is in San Antonio.

On May 28, 2002, Calderon filed a motion to transfer venue from Smith County to Bexar County. Approximately one week later, Calderon filed a motion in

---

1. A court that renders a final order in a suit affecting the parent-child relationship acquires continuing, exclusive jurisdiction over matters pertaining to the children. TEX. FAM. CODE ANN. § 155.001 (Vernon Supp.2002).

Smith County seeking modification of the trial court's October 24 order. Holiday filed an affidavit controverting Calderon's motion to transfer. In his affidavit, Holiday contends that Calderon is not entitled to the transfer because paragraph 8 of the M.S.A. (the "MSA provision") expressly states that continuing jurisdiction of the children will remain in Smith County for three years. Holiday also points out that the M.S.A. provision is incorporated into the trial court's October 24 order.

Calderon requested that the trial court rule on her motion to transfer without a hearing. The trial court denied Calderon's request and on August 15, after a hearing, denied Calderon's motion. Calderon filed her petition for writ of mandamus asking this court to direct the trial court to vacate its order denying the motion to transfer and to transfer the proceedings to Bexar County. Calderon also asks this court to impose sanctions against Holiday pursuant to Rule 52.11 of the Texas Rules of Appellate Procedure.

### AVAILABILITY OF MANDAMUS

■ Mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no adequate remedy by appeal. *In re Daisy Mfg. Co.*, 17 S.W.3d 654, 658 (Tex.2000) (orig. proceeding). A trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding). Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

### ABUSE OF DISCRETION

Calderon argues that the trial court had no discretion to deny her motion to trans-

fer because it is undisputed that the children have resided in Bexar County for more than six months. She further contends that the M.S.A. provision cannot serve as a defense to her motion because the mandatory transfer requirement of section 155.201 cannot be negated by contract. Holiday maintains that the trial court properly denied Calderon's motion to transfer because (1) section 153.0071 of the Texas Family Code allows the parties to a mediated settlement agreement in a suit affecting the parent-child relationship ("SAPCR") to make an agreement that is contrary to section 155.201; (2) Calderon, by "clear overt acts," waived her right to contest the trial court's order denying her motion to transfer; and (3) Calderon is estopped and/or barred from attacking the M.S.A. provision.

### *Relationship Between Family Code Sections 155.201 and 153.0071*

■ Section 155.201(b) of the Texas Family Code provides as follows:

(b) If a suit to modify or a motion to enforce an order is filed in the court having continuing, exclusive jurisdiction of a suit, on the timely motion of a party the court *shall* transfer the proceeding to another county in this state if the child has resided in the other county for six months or longer.

TEX. FAM.CODE ANN. § 155.201(b) (Vernon 2002) (emphasis added). The Texas Supreme Court has held that the use of the word "shall" indicates that this statute is mandatory. *Cassidy v. Fuller*, 568 S.W.2d 845, 847 (Tex.1978) (referring to section 11.06 of the former Texas Family Code).[2] Therefore, a trial court has no discretion but to transfer the proceeding if the child has resided in another county for six months or more. *E.g.*, *Proffer v. Yates*, 734 S.W.2d 671, 673 (Tex.1987) (applying

---

**2.** Section 11.06 is the predecessor to section 155.201.

section 11.06); *In re Powell*, 79 S.W.3d 814, 816 (Tex.App.Fort Worth 2002, orig. proceeding); *In re Sanchez*, 1 S.W.3d 912, 914 (Tex.App.Waco 1999, orig. proceeding).

In support of her argument that the M.S.A. provision does not control over the mandatory transfer requirement of section 155.201, Calderon calls our attention to the supreme court's decision in *Leonard v. Paxson*, 654 S.W.2d 440 (Tex.1983). In *Leonard*, the relator and her former husband entered into an agreement incident to divorce, which was approved by the trial court and incorporated into the final divorce decree. The agreement provided that "[a]ll acts contemplated by this Agreement shall be performed in El Paso County, Texas, and all sums of money payable under this Agreement shall be payable in El Paso, Texas."

The next year, the relator instituted a proceeding to modify the child support provisions of the divorce decree. In addition, she filed a motion to transfer the proceeding to the county where her children had resided for more than six months prior to the filing of the motion to modify. Her former husband contested the motion to transfer alleging that venue was proper in El Paso County under the venue provision of the agreement. The trial court agreed and denied the motion to transfer. The relator sought a writ of mandamus from the supreme court.

In reviewing the lower court's action, the supreme court concluded that, despite the agreement of the parties, the trial court had a mandatory duty to transfer the proceeding. *Id.* at 441. In so holding, the court noted that "the fixing of venue by contract, except in such instances as permitted by Article 1995, § 5 [creating an exception to the general venue statute

when a person has contracted in writing to perform an obligation in a particular county] is invalid and cannot be the subject of private contract." *Id.* (citing *Fidelity Union Life Ins. Co. v. Evans*, 477 S.W.2d 535, 537 (Tex.1972)).

Although the agreement in *Leonard* stated that all acts contemplated by the agreement, including the payment of money, were performable in El Paso County, the relator did not allege that her former husband had breached the agreement nor did she seek a money judgment for support payments due under the terms of the agreement. Instead, the relator sought to modify the agreement's child support provisions. Consequently, the underlying proceeding was a SAPCR and not a suit for breach of contract. As such, article 1995, section 5 was inapplicable because the venue provisions of the Family Code remove a SAPCR from the operation of the general venue statute. *Id.* Therefore, the mandatory venue and transfer provisions of the Family Code controlled, *id.* at 441–42, and the attempted contractual modification of those provisions was void. *See id.* The court reasoned that "[t]o hold otherwise would defeat the legislature's intent that matters affecting the parent-child relationship be heard in the county where the child resides, and would promote forum shopping by contract." *Id.* at 442 (citing *Cassidy*, 568 S.W.2d at 847).

Holiday contends that *Leonard* does not control here. To support his position, he first relies on section 153.0071,[3] which prescribes the mediation procedure in a SAPCR. Subsection (d) provides that a mediated settlement agreement is binding on the parties if the agreement

---

**3.** All statutory references are to the current version of the Texas Family Code unless oth- erwise indicated.

(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

(2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

TEX. FAM.CODE ANN. § 153.0071(d) (Vernon 2002).

Holiday points out that section 153.0071 incorporates the strong public policy favoring alternative dispute resolution in family law cases in Texas. Further, he argues, in effect, that section 153.0071(e), which provides that a party is entitled to judgment on a mediated settlement agreement "notwithstanding Rule 11, Texas Rules of Civil Procedure or another rule of law," affords parties wider latitude in a mediated settlement agreement than is available in an agreement reached outside of mediation. Specifically, Holiday contends that mediated settlement agreements containing the requisite language and signatures are enforceable notwithstanding "Rule 11, the rules of procedure or any other rule of law." Therefore, he concludes that an agreement fixing venue is permitted in a mediated settlement agreement and controls over the mandatory transfer provision of section 155.201, provided the parties comply with the requirements of subsection (d). Calderon does not contend that the agreement fails to comply with these requirements.

 Section 153.0071(e) requires a trial court to enter judgment on a mediated settlement agreement that complies with subsection (d), even where one party withdraws consent to the agreement. *Alvarez v. Reiser*, 958 S.W.2d 232, 234 (Tex. App.-Eastland 1997, writ denied). Unilateral withdrawal of consent does not negate the enforceability of the agreement, and a separate suit for enforcement of the agreement is not necessary. *See id.* Holiday cites no case addressing his argument that the "another rule of law" language of subsection (e) permits a provision in a mediated settlement agreement that would ordinarily be void under some other rule of law. However, two recent cases provide guidance on the issue.

In *Cayan v. Cayan*, 38 S.W.3d 161 (Tex. App.-Houston [14th Dist.] 2000, pet. denied), the court addressed whether the trial court erred in signing a divorce decree based on a mediated settlement agreement that one party had repudiated prior to the entry of judgment. In deciding the issue, the court applied section 6.602(c), which is identical to section 153.0071(e). In its discussion, the court noted that prior to the enactment of section 153.0071, which formerly applied to mediated settlement agreements in divorce proceedings, settlement agreements in family law cases were governed by Rule 11 of the Texas Rules of Civil Procedure, Chapter 154 of the Texas Civil Practice and Remedies Code, and general contract law. *See id.* at 165 n. 6. As a result, the agreements were enforceable in the same manner as other written contracts, and a separate suit for enforcement was required if one party withdrew consent prior to the entry of judgment on the agreement. *See id.* at 165–66. The plain language of section 6.602(c), however, reflects that the legislature intended to eliminate the requirement of enforcement by a separate suit. *See id.* at 166. The phrase "notwithstanding Rule 11, Texas of Procedure or another rule of law" reflects this intent and refers to the rules of law that require a separate suit for enforcement. *See id.* at 165–66. Accordingly, the court held that section 6.602(c) entitles a party to judgment on a mediated settlement agreement that meets the statutory requirements for

validity, even where one party withdraws consent to the agreement, without a separate suit for enforcement. *See id.* at 165.

The court indicated in dicta, however, that this rule is not without exception. *Id.* at 166 n. 8. Specifically, the court cited *In re Kasschau*, which holds that a trial court does not abuse its discretion in failing to enforce a section 153.0071 agreement that is void because it contains an illegal provision. *In re Kasschau*, 11 S.W.3d 305, 311 (Tex.App.-Houston [14th Dist.] 1999, no pet.). In its reference to *Kasschau*, the Houston court stated that "a court cannot construe a statute or a contract to impose or enforce an illegal obligation or otherwise compel an illegal act. . . ." *Cayan*, 38 S.W.3d at 166 n. 8.

In the second case, *Boyd v. Boyd*, the trial court denied a motion to enforce a mediated settlement agreement after determining that the agreement did not include substantial community assets. On appeal, the appellant argued that the trial court had no discretion to deny his motion to enforce the agreement because the agreement complied with the requirements of section 6.602. *Boyd v. Boyd*, 67 S.W.3d 398, 401 (Tex.App.-Fort Worth 2002, no pet.). The Fort Worth court disagreed and held that "the phrase 'notwithstanding rule 11 [ . . . ] or another rule of law' does not require a trial court to enforce a mediated settlement agreement simply because it complies with [the requirements for validity set out in section 6.602(b) ] . . . ." *Id.* at 403. The court reasoned that the appellant's argument, when taken to its logical end, could require "enforcement of an agreement that was illegal or that was procured by fraud, duress, coercion, or

other dishonest means," which would be "an absurd result" and one not intended by the legislature.[4] *Id.* Adopting a less restrictive interpretation, the court held that the quoted phrase means "the requirements of rule 11 and the common law that ordinarily apply to the enforcement of settlement agreements do not apply to mediated settlement agreements in divorce proceedings, if the agreements meet the three requirements listed in section 6.602(b)."

■ Although we recognize that the dicta in *Cayan* has no precedential value, we agree that section 153.0071(e) should not be construed so as to authorize the inclusion of an illegal provision in a mediated settlement agreement. Further, we conclude that the application of this principle should not be limited to those provisions that, if upheld, would contravene a criminal statute. We also agree with the reasoning in *Boyd* that interpreting an identical provision, section 6.602(c), to require the entry of judgment on a mediated settlement agreement upon mere compliance with the statutory requirements for validity could produce results unintended by the legislature. Even though the provision contravenes a rule of law which would render the provision void, Holiday argues that the legislature intended to allow the parties to a mediated settlement agreement to include such a provision by agreement. However, we conclude that Holiday's proposed construction is contrary to the plain language of the statute as well as the principles stated above. Thus, in accordance with *Cayan* and *Boyd*, we conclude that the language in section 153.0071(e) relates only to the manner of enforcing a mediated settlement agree-

---

4. This court has before it only the matter of venue as raised in Calderon's petition. The issue of enforceability or validity of the mediated settlement agreement as a whole or whether there was fraud in the inducement, mutual mistake or other potential issues may possibly be considered in a trial on the merits. We, however, are confined to the issues determined herein.

ment. Accordingly, we hold that the phrase "notwithstanding Rule 11, Texas Rules of Procedure or another rule of law" means that Rule 11, Chapter 154 of the Texas Civil Practice and Remedies Code, and general contract law, insofar as they apply to the enforcement of settlement agreements, do not apply to the enforcement of a mediated settlement agreement in a SAPCR if the agreement meets the requirements of section 153.0071(d). We also hold that section 153.0071(e) does not overrule *Leonard.*

■ Holiday next contends that even if we do not read section 153.0071(e) as broadly as he suggests, the M.S.A. provision is valid because the facts in *Leonard* are distinguishable from those in the case at bar. He argues that *Fidelity Union,* relied upon by the court in *Leonard,* stands for the proposition that "an *advance agreement* about venue may not contravene the statutory scheme for fixing venue." *Fidelity Union,* 477 S.W.2d at 536 (emphasis added). Because Calderon signed the M.S.A. at a time when she already had a right to move to transfer the matter to Bexar County, Holiday argues that the M.S.A. provision cannot be considered an "advance agreement" and the holding in *Leonard* is inapposite. We disagree with Holiday's interpretation of the holding in *Fidelity Union.*

The language quoted by Holiday summarizes the holding in *International Travelers' Ass'n v. Branum,* 109 Tex. 543, 212 S.W. 630 (1919), which was cited in *Fidelity Union.* However, one of the authorities relied upon by the court in *Branum* states the rule as being that "[a person] can not ... bind himself in advance by an agreement, which may be specifically enforced, thus to forfeit his rights at all times and on all occasions, whenever the case may be presented." *Id.,* 109 Tex. at 548, 212 S.W. at 632 (citation omitted). We interpret

this language and the resulting holding in *Branum* to prohibit venue agreements made in advance of *the controversy.* This interpretation is consistent with the discussion in *Fidelity Union* relating to venue agreements made "in advance of trial," *Fidelity Union,* 477 S.W.2d at 537, and with the court of civil appeals' conclusion that "the authorities quoted [in *Branum* ] ... indicate that [the decision] rests on the broader principle of public policy that a person ought not to be permitted to contract away procedural rights before any controversy arises." *Fidelity Union Life Ins. Co. v. Evans,* 468 S.W.2d 869, 871–72 (Tex.Civ.App.Dallas 1971), *aff'd,* 477 S.W.2d 535 (Tex.1972); *see also McCullough v. Fidelity Union Life Ins. Co.,* 470 S.W.2d 209, 212 (Tex.Civ.App.Waco 1971, writ ref'd n.r.e.) (citing *Branum* and holding that "any contract to change the law with reference thereto before any controversy has arisen 'is utterly against public policy' ").

The M.S.A. provision in this case, if enforced, restricts Calderon's right to mandatory transfer in the event future controversy arises. Therefore, the provision falls squarely within the holding in *Fidelity Union* as applied in *Leonard.*

### Waiver and Estoppel

■ Holiday asserts that the M.S.A. provision constitutes a valid express waiver of Calderon's right to move for a transfer within the three-year period specified in the agreement. However, under the holding in *Leonard,* any attempt to supplant the mandatory transfer provision in a SAPCR is void. *See Leonard,* 654 S.W.2d at 441–42. The term "void" means "of no legal effect" or "null." BLACK'S LAW DICTIONARY 1568 (7th ed.1999). Therefore, the provision cannot be an effective contractual waiver of Calderon's right to the transfer required by section 155.201. *See McCullough,* 470 S.W.2d at 212; *see also*

*Johnson v. U.S. Industries, Inc.*, 469 S.W.2d 652, 654 (Tex.Civ.App.-Eastland 1971, no writ) (a settlement agreement attempting to change venue contrary to the statutory law of the state cannot constitute a waiver of venue rights).

 Holiday also contends that Calderon is estopped from asserting the invalidity of the M.S.A. provision because it would be unconscionable to allow Calderon to maintain a position inconsistent with one in which she acquiesced or from which she accepted a benefit. A void agreement cannot be rendered enforceable by estoppel. *Kasschau*, 11 S.W.3d at 314. Therefore, Calderon is not estopped from asserting the provision's invalidity.

### Res Judicata and Collateral Estoppel

In his final argument, Holiday contends that the doctrines of res judicata and collateral estoppel prevent Calderon from relitigating venue in the instant case because the issue has already been decided based upon the same facts that presently exist.

 In general terms, res judicata is the generic term for a group of related concepts concerning the conclusive effect given final judgments. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). This general doctrine of res judicata encompasses two distinct categories: (1) res judicata, or claim preclusion, and (2) collateral estoppel, or issue preclusion. *Id.* Holiday's argument raises the defense of issue preclusion.

 The doctrine of collateral estoppel is used to prevent a party from relitigating an issue that it "previously litigated and lost." *Quinney Elec., Inc. v. Kondos Entertainment, Inc.*, 988 S.W.2d 212, 213 (Tex.1999) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979)). Thus, collateral estoppel precludes relitigation of identical issues of fact or law that were actually litigated and essential to the judgment in a prior suit. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex.1985). More particularly, the doctrine extends only to those issues that were either expressly determined or necessarily determined in an adjudication and not to those matters which might have been, but were not, raised and adjudicated in the prior action. *Avila v. St. Luke's Lutheran Hospital*, 948 S.W.2d 841, 847 (Tex.App.San Antonio 1997, writ denied) (citing *Barr*, 837 S.W.2d at 628). Once an essential issue is actually litigated, that issue is conclusive in a subsequent action between the same parties. *Van Dyke*, 697 S.W.2d at 384. Collateral estoppel applies whether the issue is determined by agreement or by the court. *Avila*, 948 S.W.2d at 847.

 Actual litigation occurs when an issue is properly raised, by the pleadings or otherwise, is submitted for determination, and is determined. *Rexrode v. Bazar*, 937 S.W.2d 614, 617 (Tex.App.Amarillo 1997, no writ) (citing *Van Dyke*, 697 S.W.2d at 384). The M.S.A. provision in this case, as incorporated into the trial court's order, states that "jurisdiction and venue shall remain in Smith County, Texas for a period of three (3) years . . . ." Although we are unable to determine from the record whether venue was contested at the time the M.S.A. was signed, the plain language of the M.S.A. provision and resulting October 24 order reveals that the parties merely agreed to maintain the status quo as to jurisdiction and venue for three years and did not address the merits of any issue relating to venue. At the expiration of the three-year period, the issue would be subject to redetermination, either through litigation or another agreement. Where a settlement agreement indicates that an issue was not

determined, the court's judgment based upon the settlement agreement cannot include an adjudication of that issue. *See Avila*, 948 S.W.2d at 847 (judgment based on settlement agreement and purporting to adjudicate cause on the merits does not adjudicate liability where settlement agreement includes express disclaimer of liability). In the case at hand, neither the settlement agreement nor the trial court's order thereon purports to determine the merits of any issue regarding venue. Therefore, the issue of venue was not "actually litigated" in the prior proceeding, and the doctrine of collateral estoppel does not apply to the issue.

### ADEQUATE REMEDY BY APPEAL

Transferring a case to a county where the child has resided for more than six months is a mandatory ministerial duty under section 155.201 of the Texas Family Code. *Bollard v. Berchelmann*, 921 S.W.2d 861, 863 (Tex.App.San Antonio 1996, no writ) (citing *Proffer*, 734 S.W.2d at 673, which refers to section 11.06); *see* TEX. FAM.CODE ANN. § 155.201(b). An order refusing to transfer the proceeding is not subject to interlocutory appeal. TEX. FAM.CODE ANN. § 155.204(e). Remedy by regular appeal, though available, is frequently inadequate to protect the rights of parents and children to a trial in a particular venue. *Proffer*, 734 S.W.2d at 673. Therefore, mandamus is available to compel mandatory transfer in a SAPCR. *Id.* at 672; *In re Sanchez*, 1 S.W.3d 912, 914 (Tex.App.Waco 1999, orig. proceeding).

### CONCLUSION

The trial court had a mandatory duty to transfer the underlying proceeding to Bexar County because the children had resided in Bexar County for six months prior to the filing of Calderon's motion to transfer, and the M.S.A. provision fixing venue in Smith County is void. Therefore, the trial court abused its discretion by denying the motion to transfer. Because Calderon does not have an adequate remedy by appeal, we conditionally grant mandamus relief. We trust that the trial court will vacate its order denying the motion to transfer and transfer this suit to Bexar County. The writ will issue only if it fails to do so. Calderon's request for sanctions is denied.

***Writ conditionally granted.***