**James Lawrence WOOD,
et al., Appellants,**

v.

**VICTORIA BANK & TRUST
COMPANY, N.A., et al.,
Appellees.**

No. 13–02–624–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Aug. 18, 2005.

Andrew M. Greenwell, Harris & Greenwell, Corpus Christi, for appellants.

Thomas Kirkendall, Kirkendall, Isgur & Foltz, The Woodlands, Louis L. Bagwell, Baker & Botts, Houston, Marshall Boykin III, Wood, Boykin & Wolter, Corpus Christi, for appellees.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and GARZA.

### OPINION ON MOTION FOR REHEARING

Opinion on Motion for Rehearing by Justice RODRIGUEZ.

We grant the motion for rehearing filed by appellees, Texas Commerce Bank, N.A. (TCB),[1] Victoria Bank & Trust Company, Victoria Bankshares, Inc., and Wells Fargo Bank Texas, N.A., withdraw our opinion dated February 10, 2005, and substitute the following as the opinion of this Court.

Appellants, James Lawrence Wood, Charles Kaffie and James Barnette, brought suit against appellees alleging various statutory and common law causes of action. Appellants' claims arose from a transaction in which TCB substituted its own subsidiary trust company as fiduciary on certain accounts and subsequently sold the subsidiary to Victoria Bankshares. After granting several motions for partial summary judgment in favor of appellees, the trial court granted a final summary judgment dismissing all claims asserted by appellants. By nine issues, appellants challenge the trial court's rulings. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are not in dispute. In 1993, TCB purchased Ameritrust, a

1. Texas Commerce Bank is now JP Morgan Chase Bank but will be referred to as TCB for purposes of this opinion.

company which served as trustee for accounts in which appellants had an interest. After the purchase, Ameritrust was renamed Texas Commerce Trust Company and later merged into TCB. As a result of the merger, TCB became the trustee of appellants' accounts thereby creating a fiduciary relationship with appellants.

Early in 1994, with the approval of bank regulatory authorities, TCB formed four subsidiary trust companies, including Texas Commerce Trust Company–Corpus Christi (TCTC–CC).[2] On March 9, 1994, TCB entered into a fiduciary substitution agreement with TCTC–CC[3] for the purpose of substituting TCTC–CC as the fiduciary for all Corpus Christi-related accounts, including appellants' accounts. As required by statute, TCB sent notice of the proposed substitutions to designated persons, including appellants. The notice advised that account holders had ninety days to object to the proposed transfer. One beneficiary objected to the transfer of the account, and as a result that beneficiary's account was not transferred. The remaining accounts were transferred to TCTC–CC on June 10, 1994.

On March 11, 1994, TCB entered into an agreement to sell the stock of TCTC–CC to Victoria Bankshares for $8.75 million.[4] TCB sent notice of the proposed sale to each account holder and beneficiary, including appellants, on March 28, 1994. Following regulatory approval from federal and state authorities, the stock sale was completed on June 30, 1994. In conjunction with the sale of stock to Victoria Bankshares, TCTC–CC merged with Victoria Bank & Trust, a subsidiary of Victoria Bankshares.[5]

After the sale to Victoria Bankshares and merger with Victoria Bank & Trust, appellants filed suit claiming that the transfer and sale of fiduciary appointments by TCB was fraudulent and illegal. Appellants charged that the actions of TCB violated the law of trusts, deceptive trade practice laws, breached fiduciary duties, and constituted conversion of trust property. Appellants further argued that the Substitute Fiduciary Act did not authorize the transfer of fiduciary accounts to a subsidiary trust company for the purpose of selling that trust company to a third party.

Subsequently, the trial court granted a series of motions for partial summary judgment and a final summary judgment in favor of appellees. Appellees' first motion for partial summary judgment was

---

2. The four subsidiary trust companies formed by TCB were Texas Commerce Trust Company–Corpus Christi, Texas Commerce Trust Company–Sherman, Texas Commerce Trust Company–Waco, and Texas Commerce Trust Company–Wichita Falls. Only Texas Commerce Trust Company–Corpus Christi is a party to this lawsuit.

3. The substitution agreement was entered into pursuant to article 548h of the Texas Revised Civil Statutes. See Substitute Fiduciary Act, 70th Leg., R.S., ch. 207, § 2, 1987 Tex. Gen. Laws 1487, repealed by Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 6(a), 1997 Tex. Gen. Laws 3091, 3602 (now codified at TEX. FIN.CODE ANN. §§ 274.001–.203 (Vernon Supp. 2004–2005)). We will refer to this statute as the Substitute Fiduciary Act or the Act.

4. Appellees state in their brief that the $8.75 million sales price was the approximate amount TCB paid for the same accounts a few months earlier. This price was based on the multiple of three times the revenue stream produced by the fiduciary fees.

5. TCTC–CC merged into Victoria Bank & Trust pursuant to Texas Revised Civil Statute article 342–305. Act of March 23, 1943, 48th Leg., R.S., ch. 97, subch. III, art. 8, 1943 Tex. Gen. Laws 128,140, amended by Acts 1993, 73rd Leg., R.S., ch. 765, § 3, 1993 Tex. Gen. Laws 2972, 2976, and ch. 944, § 2, 1993 Tex. Gen. Laws 4043 (now codified at TEX. FIN. CODE ANN. § 59.004 (Vernon Supp.2004–2005)).

granted on November 25, 1997 with the trial court ruling that the Substitute Fiduciary Act permitted TCB to form a subsidiary trust company and transfer fiduciary accounts to that subsidiary. On July 20, 1998, the court granted appellees' second motion for partial summary judgment finding that the statutorily required Irrevocable Undertaking filed by Texas Commerce Equity Holdings, Inc., complied with the Substitute Fiduciary Act. On May 31, 2000, the trial court granted appellees' third motion for partial summary judgment, finding that TCB's actions did not breach the common law fiduciary duties of loyalty, faithful administration of trust accounts, and full disclosure. On June 26, 2002, the trial court granted appellees' fourth motion for partial summary judgment, finding that the notice provided by TCB of the proposed transfer of fiduciary accounts satisfied all the requirements of the Substitute Fiduciary Act. On October 23, 2002, the trial court granted a final summary judgment in favor of appellees, disposing of all parties and all claims in the case. Appellants challenge all summary judgments on appeal.

## II. STANDARD OF REVIEW

We review de novo a trial court's grant or denial of a traditional motion for summary judgment. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex. App.-Corpus Christi 2003, no pet.). To prevail, the moving party bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). In deciding whether there is a genuine issue of material fact, evidence favorable to the non-movant will be taken as true, and all reasonable inferences made and all doubts resolved in the non-movant's favor.

*Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997).

## III. ANALYSIS

Appellants raise nine issues on appeal challenging TCB's transfer of fiduciary accounts to TCTC–CC and the subsequent sale to Victoria Bankshares. As a threshold matter, we will address appellants' fourth issue and determine whether, under the facts of this case, the Substitute Fiduciary Act could be utilized to transfer the fiduciary accounts to TCTC–CC.

### A. Substitute Fiduciary Act

By their fourth issue, appellants argue that TCB improperly and illegally invoked the Substitute Fiduciary Act to transfer fiduciary appointments to its subsidiary because the Act only allows bank holding companies to "consolidate" their trust functions into a separate trust subsidiary. Appellants assert that the statute was used by appellees in this transaction to "de-consolidate" the fiduciary appointments from TCB to its four subsidiary trust companies, and therefore the transfer is illegal and void. In support of their argument appellants cite the language of the statute, case law interpreting the statute, and the legislative history. Appellees respond by arguing: (1) neither the language of the statute nor the legislative history prohibits a "decentralizing" transfer; (2) the language of the statute is clear and unambiguous and therefore legislative history should not be used to change the statute's meaning; and (3) the transaction nonetheless satisfies the purpose of the statute.

The Substitute Fiduciary Act provides, in relevant part:

(a) A subsidiary trust company and one or more of its affiliated banks may enter into one or more agreements un-

der which the subsidiary trust company is substituted as fiduciary for each affiliated bank in each fiduciary account listed in the agreement. The agreement shall be filed with the banking commissioner before the effective date of the substitution....

\* \* \* \*

(g) On the effective date the subsidiary trust company succeeds to all right, title, and interest in all property that the affiliated bank holds as fiduciary, except property held for accounts for which there has been no substitution under this Act, without the necessity of any instrument of transfer or conveyance, and the subsidiary trust company shall, without the necessity of any judicial action or action by the creator of the fiduciary account, become fiduciary and perform all the duties and obligations and exercise all the powers and authority connected with or incidental to that fiduciary capacity....

Substitute Fiduciary Act, 70th Leg., R.S., ch. 207, § 2, 1987 Tex. Gen. Laws 1487, *repealed by* Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 6(a), 1997 Tex. Gen. Laws 3091, 3602.

■■■ This Court's ultimate goal in construing a statute is to give effect to the legislature's intent as expressed in the language of the statute. *See Crimmins v. Lowry,* 691 S.W.2d 582, 584 (Tex.1985). The Substitute Fiduciary Act does not expressly address whether consolidation is a requirement when transferring fiduciary accounts. The statute only provides that "a subsidiary trust company and one or more of its affiliated banks may enter into one or more agreements under which the subsidiary trust company is substituted as fiduciary...." From this language alone, we cannot conclude that the legislature intended to require the fiduciary substitu-

tion to result in a consolidation when utilizing the statute. To the contrary, the failure to include any language requiring consolidation indicates that the legislature did not intend such a requirement. *See Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981) (stating that if the legislature had intended to include a restriction it could easily have done so by simply drafting the restriction into a provision of the act); *Allison v. Allison,* 3 S.W.3d 211, 214 (Tex.App.-Corpus Christi 1999, no pet.) ("[H]ad the Legislature intended to include visitation within the exception to Texas's continuing jurisdiction ... it would have included the word visitation."). Because the plain language of the Substitute Fiduciary Act does not require consolidation, we presume the legislature did not intend to include such a requirement in the Act. Therefore, we find that any transfer of fiduciary accounts between a bank and its subsidiary meeting the requirements of the statute is allowed regardless of whether the transfer results in a consolidation or de-consolidation of accounts.

Moreover, our review of case law and the Act's legislative history reveals that neither specifically addresses whether the statute is to be used solely for the purpose of consolidating fiduciary accounts. *See Bank One, N.A. v. Ameritrust Tex., N.A.,* 858 S.W.2d 516 (Tex.App.-Dallas 1993, writ denied); *In re Estate of Touring,* 775 S.W.2d 39 (Tex.App.-Houston [14th Dist.] 1989, no writ). Appellants argue that the purpose of the Act, as clearly stated in *In re Touring,* is to "promote efficient and cost-effective delivery of fiduciary services by allowing the placement of these services within a single corporate entity which maintains offices throughout the State of Texas." *See In re Estate of Touring,* 775 S.W.2d at 42. Appellants also argue that the legislative history makes clear that the

purpose of the statute is to consolidate fiduciary services. However, in reviewing the house and senate committee discussions, the driving force behind the Act appears to have been the promotion of efficient and cost-effective delivery of fiduciary services to enable the continuance of local trust services and to provide trust services to communities in which they were not economically feasible before. The centralization of fiduciary accounts into a single corporate entity, as stated in *In re Estate of Touring*, was simply a method by which the legislature contemplated the purpose being achieved. *See id.* Moreover, we have found no discussions regarding the legislature's intent to specifically limit the transfers to consolidations only. Because we find no clear legislative intent that there be a restriction or limitation on transfers under the statute and no restriction was expressly stated in the statute, we decline appellants' invitation to create one. *See Jones v. Liberty Mut. Ins. Co.*, 745 S.W.2d 901, 901 (Tex.1988) ("A court may not judicially amend a statute and add words that are not implicitly contained in the language of the statute."); *Cameron*, 618 S.W.2d at 540 (explaining that additional words or requirements can be inserted into a statute only when necessary to give effect to clear legislative intent).

As neither the language of the statute, case law, nor the legislative history explicitly limits the use of the Substitute Fiduciary Act for consolidation purposes only, we conclude the Act provided statutory authority for TCB to substitute TCTC–CC as fiduciary on the trust accounts. Appellants' fourth issue is overruled.

### B. Irrevocable Undertaking

In issues seven and eight, appellants argue that the irrevocable undertaking filed by Texas Commerce Equity Holdings, Inc.,[6] failed to comply with the Substitute Fiduciary Act. Section 7(a) of the Act states that "the subsidiary trust company's owning bank holding company shall file with the banking commissioner an irrevocable undertaking to be fully responsible for the existing and future acts and omissions of its subsidiary trust company." Substitute Fiduciary Act, 70th Leg., R.S., ch. 207, § 7, 1987 Tex. Gen. Laws 1487 (repealed 1997). Appellants assert that the undertaking was insufficient because: (1) it was limited to future acts of the trust subsidiary "for so long as the Subsidiary Trust Company is owned, directly or indirectly, by [Texas Commerce Equity Holdings, Inc.]"; and (2) Texas Commerce Equity Holdings, Inc. was not a proper legal entity to execute and file the irrevocable undertaking.

■■■■ After reviewing the irrevocable undertaking filed by Texas Commerce Equity Holdings, Inc., we find that it satisfies the statutory requirements. The statute only requires that a bank holding company be fully responsible for the existing and future fiduciary acts and omissions of *its* subsidiary trust company. *See id.* An undertaking stating that the bank holding company will be responsible only for so long as the subsidiary is owned by the holding company is no less irrevocable and fulfills the obligation stated in the statute. Moreover, we find Texas Commerce Equity Holdings, Inc., to be an owning bank holding company as defined under the Bank Holding Company Act,[7] and it is

---

**6.** Texas Commerce Equity Holdings, Inc., owned 100% of the stock of TCB.

**7.** The Substitute Fiduciary Act incorporates the definition of "bank holding company"

stated in the Bank Holding Company Act. *See* 12 U.S.C.A. § 1841(a) (2001). A bank holding company is defined as any company which has control over any bank or over any

therefore an appropriate entity to file the irrevocable undertaking. Appellants' seventh and eighth issues are overruled.

## C. Constitutionality of the Act

By their ninth issue, appellants argue that the Substitute Fiduciary Act, as construed by the trial court, is unconstitutional. Appellants assert that the trial court construed the Act to allow fiduciary accounts to be transferred to a third party for consideration without notice and regardless of the contractual arrangement between the fiduciary and the settlor or beneficiaries of the trust. Appellants contend we must determine the constitutionality of the Act in light of this interpretation by the trial court. We disagree.

Appellants misinterpret the trial court's findings regarding the scope of the Act. The trial court in this case ruled that the Substitute Fiduciary Act permitted TCB to form a subsidiary trust company and transfer fiduciary accounts to that subsidiary. The court did not construe the Act to allow fiduciary accounts to be transferred to a third party as appellant contends. The transfer of accounts to a third party, which took place in this case, was made pursuant to Texas Revised Civil Statute article 342–305, a separate statute. *See* Act of March 23, 1943, 48th Leg., R.S., ch. 97, subch. III, art. 8, 1943 Tex. Gen. Laws 128,140, *amended by* Acts 1993, 73rd Leg., R.S., ch. 765, § 3, 1993 Tex. Gen. Laws 2972, 2976, and ch. 944, § 2, 1993 Tex. Gen. Laws 4043 (now codified at TEX. FIN.CODE ANN. § 59.004 (Vernon Supp. 2004–2005)). Therefore, the constitutionality of the Substitute Fiduciary Act as a statute allowing the transfer of accounts to a third party need not be addressed. Appellants' ninth issue is overruled.

## D. Transfer of Fiduciary Appointments for Consideration

By their fifth issue, appellants argue that under established trust law, a trustee can never resign or transfer his office for monetary consideration, and where a trustee has transferred his fiduciary appointment in exchange for valuable consideration such transfer is void and the consideration should be disgorged and made part of the trust estate. *See Sugden v. Crossland,* 3 Sm. & Gif. 192, 65 Eng. Rep. 620 (1856); *Rosenfeld v. Black,* 445 F.2d 1337 (2d. Cir.1971); *Field v. Western Life Indemnity Co.,* 166 F. 607, 610 (N.D.Ill.1908); *Lednum v. Dallas Trust & Savings Bank,* 192 S.W. 1127, 1128 (Tex.Civ.App.-Dallas 1917, writ ref'd).

Appellees contend that the authorities relied on by appellants are outdated and do not take into account the evolution of the law relating to corporate fiduciaries. Moreover, appellees argue that none of the cases cited involved statutes authorizing a transfer of fiduciary appointments in exchange for consideration. We agree.

In this case, the transfer of fiduciary appointments upon the sale and merger of TCTC–CC into Victoria Bank & Trust was made pursuant to Texas Revised Civil Statute article 342–305 which provides:

> [I]f any merging institution shall at the time of the merger be acting as trustee, guardian, executor, administrator, or in any other fiduciary capacity, the resulting bank shall, without the necessity of any judicial action or action by the creator of such trust, continue such office, trust or fiduciary relationship and shall perform all of the duties and obligations and exercise all of the powers and authority connected with or incidental to

company that is or becomes a bank holding company. *See id.* Because Texas Commerce

Equity Holdings, Inc. owned all of TCB's stock, it was a bank holding company.

such fiduciary relationship in the same manner as though the resulting bank had been originally named or designated as such fiduciary.

Act of March 23, 1943, 48th Leg., R.S., ch. 97, subch. III, art. 8, 1943 Tex. Gen. Laws 128,140 (amended 1993). Article 342–305 expressly authorized Victoria Bank & Trust, after the merger, to succeed to any fiduciary offices held by TCTC–CC. As a result, the fiduciary appointments were effectively transferred during the merger; a merger which resulted from the exchange of consideration for the stock of TCTC–CC. *See id.* It is this transfer which appellants argue violates the common law prohibition against the sale of a fiduciary office for profit. However, reading the statute in the context in which it was applied indicates that the legislature contemplated and implicitly acknowledged that a bank would receive consideration in exchange, in part, for the transfer of fiduciary appointments. *See id.* To this extent, the statute can be interpreted as allowing the transfer of a fiduciary office in exchange for consideration. *See id.* Accordingly, we find under the facts of this case that the common law was modified by statute, article 342–305, to permit the transfer of fiduciary appointments for consideration.[8] Appellants' fifth issue is overruled.

### E. Breach of Fiduciary Duty

■ By their first, second and sixth issues, appellants argue that the fiduciary appointments held by TCB were subject to fiduciary duties which were breached. Specifically, appellants assert that by transferring the fiduciary accounts to its subsidiary and then selling the subsidiary to a third party, TCB breached the common law fiduciary duties of loyalty, which included refraining from self-dealing, faithful administration of trust accounts, and the duty of full disclosure.

Appellees do not dispute that the fiduciary appointments held by TCB were subject to fiduciary duties. They argue, however, that no duties were breached as a matter of law because TCB accomplished the substitution and sale of the fiduciary accounts by utilizing statutes which authorized these transactions. Appellees cite to the Substitute Fiduciary Act as authorizing the transfer of accounts to TCTC–CC and refer to Texas Revised Civil Statute article 342–305 as authorizing the sale of TCTC–CC.

We agree that the Substitute Fiduciary Act authorized the transfer of accounts to TCTC–CC, as discussed earlier. *See* Substitute Fiduciary Act, 70th Leg., R.S., ch. 207, § 2, 1987 Tex. Gen. Laws 1487 (repealed 1997). We also agree that article 342–305 provides for the automatic transfer of fiduciary appointments upon the successful merger of two institutions. *See* Act of March 23, 1943, 48th Leg., R.S., ch. 97, subch. III, art. 8, 1943 Tex. Gen. Laws 128,140 (amended 1993). Prior to the enactment of these two statutes, under state law the appointment of a successor trustee could take place only by court order or pursuant to the instrument creating the fiduciary relationship. *See* TEX. PROP.CODE ANN. § 113.083(a) (Vernon 1995). However, the Legislature enacted these statutes to expressly permit the transfer of accounts "without the necessity of any judicial action or action by the creator" of the fiduciary account. To find that utilizing these statutes to transfer the accounts still

8. We note that the Trust Company Act, enacted in 1997, expressly allows all of the assets of a trust institution, including the right to control accounts established with the trust institution, to be purchased. TEX. FIN.CODE ANN. § 182.401 (Vernon Supp.2004–2005). The purchaser succeeds by operation of law to all of the rights, privileges, and obligations of the selling trust institution under each account included in the assets acquired. *Id.*

allowed for a breach of common law fiduciary duties would render the statutes meaningless. Therefore, we conclude that by transferring the accounts pursuant to statute, no duties were breached as a matter of law.

Accordingly, appellants' first, second and sixth issues are overruled.

### F. Appellants' Remaining Claims

■ By their third issue, appellants challenge the trial court's final summary judgment which disposed of appellants' negligence, fraud, DTPA, conversion and civil conspiracy claims against appellees. However, appellants' brief contains no argument supported by citations to authority and the record as to why the trial court erred in dismissing these claims. Therefore, appellants have waived any error regarding this issue. *See* TEX.R.APP. P. 38.1(h); *Columbia Rio Grande Reg'l Hosp. v. Stover*, 17 S.W.3d 387, 392 (Tex.App.-Corpus Christi 2000, no pet.) (stating that issues not supported by argument and authority are deemed waived). Appellants' third issue is overruled.

## IV. CONCLUSION

Having overruled appellants' issues on appeal, we affirm the judgment of the trial court.