## In re GREAT LAKES DREDGE & DOCK COMPANY, L.L.C.

### No. 13–07–437–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Jan. 10, 2008.

James T. Brown, Alexander C. Papandreou, Michael J. Wray, Legge, Farrow, Kimmitt, McGrath & Brown, LLP, Houston, Edmundo O. Ramirez, Ellis, Koeneke & Ramirez, L.L.P., McAllen, for appellant.

Anthony G. Buzbee, Sean O'Rourke, The Buzbee Law Firm, Galveston, Aaron I. Vela, The Buzbee Law Firm, Edinburg, for Real Party in Interest, Nelson Ramos.

Before Justices YAÑEZ, RODRIGUEZ, and BENAVIDES.

**OPINION**

Opinion by Justice BENAVIDES.

Relator, Great Lakes Dredge & Dock Company, L.L.C. ("Great Lakes"), requests this Court to issue a writ of mandamus ordering the Respondent, the Honorable Ricardo Rodriguez, Jr.,[1] to enforce a venue-selection agreement. Finding no abuse of discretion, we deny Great Lakes's petition.

**I. Background**

Nelson Ramos was employed by Great Lakes beginning in 2006. Upon his employment, he was required to sign a document titled, "Employee Acceptance of Forum Selection" (hereinafter "the Agreement").[2] The Agreement provides as follows:

> As a condition of employment with Great Lakes Dredge & Dock Company LLC, the EMPLOYEE and Great

---

1. Presiding judge of the 92nd District Court of Hidalgo County, Texas.

2. Ramos signed a Spanish translation of this document. Ramos does not dispute that the language quoted by Great Lakes in its petition is a true and accurate translation of the document Ramos signed. Accordingly, we will recite the relevant portions in English.

Lakes Dredge & Dock Company, LLC mutually agree that any claim for personal, emotional, physical, or economic injury [including death] pursuant to Federal law, general maritime law, the Jones Act, or the laws of any State, or otherwise arising out of EMPLOYEE'S employment with Great Lakes Dredge & Dock Company, LLC shall, if ever made the basis of litigation initiated by EMPLOYEE be filed, at the *option* of the EMPLOYEE, in any one of the following jurisdictions *only:*

(a) the Circuit Court for the County of DuPage, State of Illinois; or

(b) The Court designated below in the State of residence of the EMPLOYEE or in the State in which the accident made the basis of the lawsuit occurred, as follows:

| STATE | STATE COURT |
| --- | --- |
| . . . . | |
| Florida | Clay County |
| . . . . | |
| Texas | District Courts of Harris County, Texas |
| . . . . | |

or

(c) The United States Federal District Court in the State of residence of the EMPLOYEE or in the State in which the accident made the basis of the lawsuit occurred, as follows:

| STATE | FEDERAL COURT |
| --- | --- |
| . . . . | |
| Florida | Middle District of Florida, Jacksonville Division |
| . . . . | |
| Texas | Southern District of Texas, Houston Division |

It is undisputed that on May 5, 2006, Ramos signed the Agreement and began working for Great Lakes. Ramos was laid off on June 10, 2006, at the completion of a dredging project, but he was rehired on June 19, 2006, to begin another project aboard the Dredge ILLINOIS, a vessel owned and operated by Great Lakes. Ramos allegedly sustained injuries aboard that vessel in August 2006.

On January 23, 2007, Ramos filed suit against Great Lakes in Hidalgo County District Court, alleging that his injuries were the result of maritime negligence and the Dredge ILLINOIS's unseaworthiness. Ramos asserted claims under the Jones Act, 46 U.S.C. § 30104 (2006) (formerly codified at 46 U.S.C. app. § 688).[3] Great Lakes responded with a Motion to Dismiss or, in the alternative, Motion to Transfer Venue and, subject thereto, Special Exceptions and Answer. Great Lakes argued that the Agreement mandated that suit be filed in either a state district court in Harris County, Texas, or in the United States District Court for the Southern District of Texas, Houston Division.[4]

---

**3.** The Jones Act was recodified in 2006. *See* Pub.L. No. 109–304, § 6(c), 120 Stat. 1510 (2006).

**4.** Great Lakes also filed a Complaint for Declaratory Judgment in the United States District Court for the Southern District of Texas, Houston Division, seeking a declaration of its rights under the "forum" selection agreement. Ramos responded by filing a Motion to Abate and Response to Complaint for Declaratory Judgment. On September 24, 2007, the United States District Court denied Ramos's motion to abate, but it has not yet finally determined Great Lakes's request for declaratory relief. *See Great Lakes Dredge & Dock Co. v. Ramos*, No. H–07–0630, 2007 WL 2787837, at *1–2, 2007 U.S. Dist. LEXIS 70493, at *1–4 (S.D.Tex. Sept.24, 2007). Great Lakes has not argued, nor do we find, that the pending declaratory judgment action filed after the state court proceedings below

Ramos filed a response, arguing that the "mandatory venue provision for the Jones Act requires Plaintiff's suit to be brought in Hidalgo County; and ... [t]he forum selection clause is vague, unjust, and unreasonable." Attached to the response was an affidavit signed by Ramos, stating that while working on a job in Florida, he was "forced" to sign the Agreement. He states that he was told by a Great Lakes representative "that if [he] did not sign the form [he] would be terminated." Finally,

he states that he did not receive any consideration for signing the form. Ramos also filed a short brief setting out authority for his positions.

Judge Rodriguez held a hearing on Great Lakes's motion to dismiss or, in the alternative, transfer. Great Lakes's petition for writ of mandamus states that arguments were presented at the hearing, but no other evidence was presented. *See* TEX.R.APP. P. 52.7(a)(2). On June 6, 2007, Judge Rodriguez denied Great Lakes's

in any way precludes this Court from determining the issues in this original proceeding.

Additionally, Great Lakes points us to a case pending in the Southern District of Texas that involves similar issues to those involved in the instant case. *See Great Lakes Dredge & Dock Co., LLC v. Larrisquitu, et al.*, Nos. H–06–3489, H–06–3669, H–06–4040, pending in the Federal District Court for the Southern District of Texas. There, Great Lakes filed a declaratory judgment action seeking an injunction and a declaration that the seaman-plaintiffs, in three state court actions similar to Ramos's state court action, cannot proceed against Great Lakes anywhere other than in the Harris County District Courts or the Southern District of Texas pursuant to the same "forum" selection clause at issue here. The federal district court held that it was precluded by the federal Anti-injunction Act from issuing an injunction or any declaratory judgment that would, in effect, preclude the state courts from proceeding. *See Great Lakes Dredge & Dock Co., LLC v. Larrisquitu*, Nos. H–06–3489, H–06–3669, H–06–4040, 2007 WL 2330187, at *3–8, 2007 U.S. Dist. LEXIS 59726, at *10–22 (S.D.Tex. Aug. 15, 2007) (citing 28 U.S.C. § 2283). The federal district court nevertheless held that it had authority to issue a declaration that the "forum" selection clauses are enforceable and that the seaman-plaintiffs breached their agreements by filing suit in Hidalgo County, denying the seaman-plaintiffs' motion to dismiss under various abstention doctrines. *Id.* at *8–16, 2007 U.S. Dist. LEXIS 59726, at *22–45.

The court addressed the seaman-plaintiffs' arguments that the "forum" selection agreements are unenforceable as against public policy in Jones Act cases. *Id.* at *15–16, 2007 U.S. Dist. LEXIS 59726, at *45. With regard

to the agreement's validity under Texas law, the district court noted that the Texas Legislature recently enacted a mandatory venue provision applicable to Jones Act cases, citing section 15.0181 of the civil practice and remedies code, but it held that this provision did not apply to the Larrisquitu plaintiffs' cases because they were filed before its effective date. *Id.* at *22, 2007 U.S. Dist. LEXIS 59726, at *67. The district court did not discuss the statutory predecessor to 15.0181 or its applicability. *Id.* It then stated "[n]or is it clear that this venue provision would trump Texas's policy of presuming forum-selection clauses valid. The forum-selection agreements in the present cases are not invalid under Texas law." *Id.* The trial court then stated that, based on the applicable statutory authority and the record which was only developed through the seaman-plaintiffs' motion to dismiss, it was refusing to conclude that the forum-selection agreements were unenforceable, and it denied the motion to dismiss. *Id.* at *22–23, 2007 U.S. Dist. LEXIS 59726, at 69.

The *Larrisquitu* court did not address the applicability of the prior, and applicable, version of the mandatory venue statute in Texas or the distinction between forum-selection clauses and venue-selection clauses, as we conclude we must. In fact, the district court expressly recognized our authority to make our own determination of the issues in this case and in the Larrisquitu state court cases, if they come before us. *See id.* ("The state courts are competent to determine the enforceability of the parties' forum-selection agreements."). The federal district court has not issued a declaratory judgment in either the Ramos or the Larrisquitu case. Finding no bar to our consideration of the issues, we proceed to make our own determination.

motion to dismiss without stating the reasons for his ruling. The mandamus proceeding followed.

## II. Mandamus Standard

 Mandamus is an extraordinary remedy that is available when the relator demonstrates that the trial court clearly abused its discretion and that it has an inadequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex.2004) (orig. proceeding). A trial court abuses its discretion when it " 'reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.' " *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding) (*quoting Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (1985) (orig. proceeding)). A review of a trial court's legal determinations is not entitled to deference—"a trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Id.* at 840.

 The relator must also show that his or her appellate remedy is inadequate. *In re Prudential*, 148 S.W.3d at 135–36. The Texas Supreme Court has explained that this element requires a practical and prudential analysis, requiring consideration of both public and private interests. *Id.* at 136. "An appellate remedy is 'adequate' when any benefits to mandamus review are outweighed by the detriments. When the benefits outweigh the detriments, ap-

pellate courts must consider whether the appellate remedy is adequate." *Id.*

## III. Enforceability of Venue Selection Agreement

Great Lakes asserts that the trial court abused its discretion in refusing to enforce a forum-selection agreement. Great Lakes argues that, under the Texas Supreme Court's recent pronouncements, forum-selection agreements are presumptively enforceable, and Ramos has not raised a valid defense to enforcement. *See In re AutoNation, Inc.*, 228 S.W.3d 663, 668 (Tex.2007) (orig. proceeding); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex.2005) ("[E]nforcement of a forum-selection clause is mandatory absent a showing that 'enforcement would be unreasonable and unjust, or that the clause was invalid due to fraud or overreaching.' "); *In re Automated Collection Tech., Inc.*, 156 S.W.3d 557, 559 (Tex. 2004) (orig. proceeding); *In re AIU Ins. Co.*, 148 S.W.3d 109, 111–15 (Tex.2004) (orig. proceeding).

In response, Ramos asserts that the mandatory venue statute in place at the time suit was filed, former Texas Civil Practice & Remedies Code section 15.018, provided that Ramos's Jones Act claim could be brought in Hidalgo County, where Ramos resided. Additionally, under that same section, suit could *not* be brought in Harris County.[5] He argues that, under

5. Acts of 1995, 74th Leg., R.S., ch. 138, § 2, 1995 Tex. Gen. Laws 138 (codified at former Tex. Civ. Prac. & Rem.Code Ann. § 15.018 (2002), *amended by* Acts of 2007, 80th Leg., R.S., ch. 203, § 2, 2007 Tex. Gen. Laws 203) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 15.0181 (effective May 24, 2007)). The former statute provided:

All suits brought under ... the Jones Act shall be brought: (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;

(2) in the county where the defendant's principal office in this state is located; or
(3) in the county where the plaintiff resided at the time the cause of action accrued.
*Id.* It is undisputed that (1) Ramos's injury occurred in Florida, (2) that Great Lakes's principal place of business is in Oak Brook, Illinois; and (3) that Ramos resides in Hidalgo County. Although Great Lakes asserts in its reply brief in a footnote that its principal office in Texas is located in Harris County, Texas, Great Lakes does not cite any authority

the Texas Supreme Court's decisions in *Leonard v. Paxson*[6] and *Fidelity Union Life Ins. Co. v. Evans*,[7] a party's pre-suit agreement to set venue in a particular county that is contrary to a mandatory venue statute is void and unenforceable. Great Lakes counters that *Leonard* and *Fidelity* were decided prior to the supreme court's recent trend of enforcing forum-selection agreements and are effectively supplanted. For the following reasons, we disagree with Great Lakes.

## A. Terminology—"Venue" v. "Forum."

 In this case, the parties have used "forum" and "venue" interchangeably. We pause to note the difference between the two terms to avoid any confusion about our holding. Each term has a distinct legal meaning that must be carefully observed, even though in some instances, Texas case law has muddled the distinction between the two.[8] *Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 68 n. 1 (Tex.App.-Dallas 1996, no pet.) (" '[V]enue' has a particular legal meaning in Texas ...."), *overruled on other grounds, In re Tyco Elecs. Power Sys., Inc.*, No. 05–04–01808–CV, 2005 WL 237232, at *5 & n. 1, 2005 Tex.App. LEXIS 819, at *11–12 & n. 1 (Tex.App.-Dallas 2005, orig. proceeding) (mem. op.); *see also Liu v. CiCi Enters.,*

*L.P.*, No. 14–05–00827–CV, 2007 WL 43816, at *2–3, 2007 Tex.App. LEXIS 81, at *6–7 (Tex.App.-Houston [14th Dist.] Jan. 9, 2007, no pet.) (mem. op.) ("The distinction between a forum selection clause and a venue selection clause is critical.").

 "Forum" generally refers to a sovereign or a state. *See Scott v. Gallagher*, 209 S.W.3d 262, 264 (Tex.App.-Houston [1st Dist.] 2006, no pet.) ("[V]enue 'refers to the propriety of prosecuting, in a particular form, a suit on a given subject matter with specific parties, over which the *forum* must, necessarily, have subject-matter jurisdiction.' ") (emphasis added). In contrast, "[a]t common law, 'venue' meant 'the neighborhood, place, or county in which the injury is declared to have been done or in fact declared to have happened.' " *State v. Blankenship*, 170 S.W.3d 676, 681 (Tex.App.-Austin 2005, pet. ref'd) (quoting BLACK'S LAW DICTIONARY 1557 (6th ed.1991)). In Texas, "venue" refers to the county in which suit is proper within the forum state. *Accelerated Christian Educ., Inc.*, 925 S.W.2d at 73; *Estrada v. State*, 148 S.W.3d 506, 508 (Tex.App.-El Paso 2004, no pet.). Thus, a "forum"-selection agreement is one that chooses another state or sovereign as the location for trial, whereas a "venue"-selection

---

in the record for this proposition that was presented to the trial court. Thus, on the record before the court, Harris County is not a choice under the mandatory venue provision in effect at the time Ramos filed suit, which is applicable to this case. Acts of 2007, 80th Leg., R.S., ch. 203, § 3, 2007 Tex. Gen. Laws 203 (codified at TEX. CIV. PRAC. & REM. CODE ANN. § 15.0181 (effective May 24, 2007) ("The change in law made by this Act applies only to an action commenced on or after the effective date of this Act. An action commenced before the effective date of this Act is governed by the law in effect immediately before the effective date of this Act, and that law is continued in effect for that purpose.")). Nevertheless, the mandatory venue statute ex-

pressly gave Ramos the option to choose venue from the three alternatives. Under the following discussion, taking away that choice by way of a venue agreement is inconsistent with the mandatory venue scheme and equally as unenforceable.

6. 654 S.W.2d 440, 441–42 (Tex.1983) (orig. proceeding).

7. 477 S.W.2d 535, 537 (Tex.1972).

8. *See, e.g., Reliant Energy, Inc. v. Gonzalez*, 102 S.W.3d 868, 875 (Tex.App.-Houston [1st Dist.] 2003), *aff'd, Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615 (Tex.2005).

agreement chooses a particular county or court within that state or sovereign.

Great Lakes does not dispute that under the contract and under federal law,[9] Ramos has the right to bring his Jones Act claim in Texas state court. In fact, the Agreement expressly states that the choices provided are entirely "at the *option* of the EMPLOYEE." The only disagreement, it appears, is whether Ramos was required to adhere to the *venue* requirements of the Agreement and bring his suit in a Harris County district court. We will now turn to the arguments.

**B. Early Texas cases refused to enforce pre-suit venue selection agreements in contravention of mandatory venue statutes based on the "ouster" doctrine and the policy reasons behind the legislative venue scheme.**

As early as 1919, the Texas Supreme Court refused to enforce an agreement regarding *venue within Texas* that contravened the statutory venue scheme. *Int'l Travelers' Ass'n v. Branum*, 109 Tex. 543, 212 S.W. 630, 631–32 (1919). In *International Travelers' Ass'n v. Branum*, the plaintiff sued to recover proceeds from an insurance policy in the county of her residence. *Id.* The defendant filed a plea of privilege [10] to be sued in Dallas County, as provided by the insurance application and policy and by the insurance company's by-laws. *Id.* at 631. In response, the plaintiff argued that the mandatory venue statute allowed her the choice to file in the county of her residence or in any county where the defendant had an agent or representative, and a contract limiting her ability to choose the venue as provided by

the venue statutes was void as against public policy. *Id.; see also Fidelity*, 477 S.W.2d at 537. The court phrased the issue as follows: "the real question presented by [the defendant's] plea of privilege .... is whether a statute giving a plaintiff the right to sue in several counties can be overridden by a contract undertaking to deprive him of that right." *Branum*, 212 S.W. at 631; *Fidelity*, 477 S.W.2d at 537.

The court agreed with the plaintiff, holding that the agreement to limit venue was void as against public policy. *Branum*, 212 S.W. at 631. Its holding was based on two premises. *Id.* at 631–32. First, it cited the policy behind venue statutes: "The rules to determine in what courts and counties actions may be brought are fixed, upon considerations of general convenience and expediency, by general law; to allow them to be changed by the agreement of parties would disturb the symmetry of the law, and interfere with such convenience." *Id.* at 631 (quoting *Nute v. Hamilton Mut. Ins. Co.*, 72 Mass. 174, 6 Gray 174 (1856)).

Second, the court cited what would later be called the "ouster" doctrine, which is often traced to the United States Supreme Court's decision in *Insurance Co. v. Morse*. *Id.* at 631–32 (citing *Ins. Co. v. Morse*, 20 Wall. 445, 87 U.S. 445, 451, 22 L.Ed. 365 (1874)). There, the Supreme Court held that a forum selection clause was unenforceable, stating that:

> Every citizen is entitled to resort to all the courts of the country, and to invoke the protection which all the laws or all those courts may afford him. A man may not barter away his life, or his freedom, or his substantial rights. In a criminal case, he can not, as was held in

---

9. 28 U.S.C. § 1333(1); *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 429 (Tex.1999).

10. A "plea of privilege" is the term previously used to refer to the procedural mechanism for transferring venue. *See* McDonald & Carlson, Texas Civil Practice, § 6.1 (2006).

Cancemi's case, 18 N.Y. 128, be tried in any other manner than by a jury of twelve men, although he consent in open court to be tried by a jury of eleven men. In a civil case he may submit his particular suit by his own consent to an arbitration, or to the decision of a single judge. So he may omit to exercise his right to remove his suit to a Federal tribunal, as often as he thinks fit, in each recurring case. In these aspects any citizen may no doubt waive the rights to which he may be entitled. He can not, however, bind himself in advance by an agreement, which may be specifically enforced, thus to forfeit his rights at all times and on all occasions, whenever the case may be presented. That the agreement of the insurance company is invalid upon the principles mentioned, numerous cases may be cited to prove. They show that agreements in advance to *oust* the courts of the jurisdiction conferred by law are illegal and void.

*Morse*, 87 U.S. (20 Wall.) at 451 (emphasis added); *see Branum*, 212 S.W. at 631–32. For these two reasons, the Texas Supreme Court refused to enforce the venue-selection agreement that removed the plaintiffs choice of venue. The court reaffirmed its conclusion in 1939 in *Ziegelmeyer v. Pelphrey*, holding that "venue is fixed by law and any [agreement] to change the law with reference thereto is void." 133 Tex. 73, 125 S.W.2d 1038, 1040 (1939).

**C. More recent Texas cases rely on the legislature's provision of contractual venue in specific, limited circumstances and expand upon the traditional justifications for refusing to enforce venue-selection agreements.**

More recently, in *Fidelity Union Life Insurance Co. v. Evans,* the Texas Supreme Court again considered the effect of a venue-selection agreement that contravened a mandatory venue statute. 477 S.W.2d at 535. In that case, Fidelity Union Life Insurance Company brought suit in Dallas County seeking to enjoin its former agent from violating his contract. *Id.* The agent's contract with Fidelity provided for venue of such an action in Dallas; however, the mandatory venue statute in effect at the time provided for mandatory venue in "the district or county court of the county in which [the defendant] has its domicile." *Id.* at 536. The agent filed a plea of privilege based on this statute. *Id.*

The supreme court cited *Branum*, noting its holding that "an advance agreement about venue may not contravene the statutory scheme for fixing venue." *Id.* The court's reasoning, however, included more justification than its earlier decision in *Branum. See id.* First, the court noted that the venue statutes at the time provided parties the right to agree to venue only when "the obligation sued upon is to be performed in the particular county of venue." *Id.* (citing TEX.REV.CIV. STAT. ANN. art. 1995, § 5 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 15.035 (Vernon 2002))). The cases cited to the court by Fidelity as support for enforcing its venue-selection agreement were under this provision, and the court held they did not support Fidelity's position. *Id.* at 536–37.

Second, the court discussed the *Branum* case and the policy reasons for enacting mandatory venue statutes. *Id.* at 537. Specifically, it noted that "venue is a matter of general convenience and expediency, whereas contracts which change the venue rules disturb the symmetry of the law." *Id.* It noted that the opinion of the court of civil appeals below, however, had articulated more policy reasons than those discussed in *Branum. Id.* Specifically, the court of civil appeals below noted that the legislature engages in a policy choice when it enacts venue rules, necessarily choosing

to bestow more favor on either a plaintiff or defendant in particular cases:

> A party litigating away from home has the same disadvantage whether he is plaintiff or defendant. When two parties live in different counties, only one can enjoy the home-county privilege. A choice must be made, and the legislature has chosen to give that privilege to defendant as a general rule, subject to enumerated exceptions, and no exception is provided for cases in which the parties have agreed to suit in a particular county. Tex.Rev.Civ. Stat. Ann., Art. 1995 (1964). In order to maintain suit away from defendant's residence, plaintiff has the burden to prove that his case falls within one of the exceptions, and doubts must be resolved in favor of the general rule. Moreover, the defendant's privilege of defending in his home county is such a valuable right that it must be protected even at the cost of two trials of the same issue. In *Branum* the public policy against permitting parties to contract away procedural rights was decisive in favor of a plaintiff who was entitled to a venue privilege under one of the exceptions. We hold that the same policy applies even more strongly to a defendant who is entitled to a venue privilege under the general rule. In this case, since we have also the mandatory provisions of Article 4656 requiring an injunction to be returnable to defendant's county, the policy against the contractual provision in question is especially strong.

*Fid. Union Life Ins. Co. v. Evans*, 468 S.W.2d 869, 872 (Tex.Civ.App.-Dallas 1971), *aff'd*, 477 S.W.2d 535 (Tex.1972). Based on this additional reasoning, the supreme court held that

> the fixing of venue by contract, *except in such instances as permitted by Article 1995, § 5*, is invalid and cannot be the subject of a private contract. . . . Article 4656 placed venue for an injunction suit in the county in which defendant Evans had his domicile; we hold that a variance of that statute is not the subject of a private contract.

*Fid. Union Life Ins. Co.*, 477 S.W.2d at 537.

Most recently in 1983, in *Leonard v. Paxson*, the Texas Supreme Court analyzed a venue-selection agreement that conflicted with the Texas Family Code's mandatory venue provisions. 654 S.W.2d 440, 441 (Tex.1983) (orig. proceeding). In that case, the parties agreed, incident to their divorce, that all acts contemplated by the agreement would be performed in El Paso County and that all proceedings based on the agreement would be filed in El Paso County. *Id.* The wife instituted a proceeding to modify the agreement's child support provisions in El Paso County, but she then moved to transfer the proceeding to Galveston County, where the children had resided for the prior six months. *Id.* The husband contested the motion, arguing that venue was proper in El Paso County based on the agreement. *Id.* The trial court refused to transfer the case, and the wife sought a writ of mandamus. *Id.* at 440–41.

The supreme court cited the mandatory venue rule in suits affecting the parent-child relationship and determined they applied to the case. *Id.* at 441. The court cited *Fidelity*, holding that the mandatory venue provisions of the family code could not be "negated by contract." *Id.* at 441–42. "To hold otherwise would defeat the legislature's intent that matters affecting the parent-child relationship be heard in the county where the child resides, and would promote forum shopping by contract." *Id.* at 442.

### D. The Texas Supreme Court's recent trend toward enforcement of forum selection agreements is based on the court's rejection of the "ouster" doctrine.

Similarly, Texas courts, like most American courts, historically disfavored forum-selection clauses. *In re AIU Ins. Co.*, 148 S.W.3d 109, 111 (Tex.2004) (orig. proceeding). For many years, courts refused to enforce such clauses on the belief that they "ousted" a court of jurisdiction—relying on the same "ouster" doctrine discussed above. *Id.* However, in 1972, the United States Supreme Court issued its decision in *The Bremen v. Zapata Off-Shore Co.*, wherein it held that forum selection clauses are presumptively valid. 407 U.S. 1, 9, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The *Bremen* Court cited and expressly rejected the "ouster" doctrine espoused in *Morse. Id.* In 2004, the Texas Supreme Court followed suit in its decision in *In re AIU Insurance Co.*, also rejecting the "ouster" doctrine. *In re AIU Ins. Co.*, 148 S.W.3d at 112–15.

 In the years since *In re AIU Insurance Co.*, the Texas Supreme Court has steadfastly held that forum-selection agreements are generally enforceable. *See In re Autonation, Inc.*, 228 S.W.3d at 668–70; *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 793; *In re Automated Collection Techs., Inc.*, 156 S.W.3d at 559. There are, however, exceptions to the general rule. *See In re Automated Techs., Inc.*, 156 S.W.3d at 559; *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 793. Specifically, "enforcement of forum-selection clauses is mandatory *unless* the party opposing enforcement 'clearly shows that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *In re Automated Techs., Inc.*, 156 S.W.3d at 559 (quoting *In re AIU Ins. Co.*, 148

S.W.3d at 112). Additionally, a forum-selection clause will not be enforced if enforcement would contravene a strong public policy of the forum where the suit was brought or if the contractually selected forum would be seriously inconvenient. *In re AIU Ins. Co.*, 148 S.W.3d at 112 (citing *The Bremen*, 407 U.S. at 15, 92 S.Ct. 1907); *see also In re Autonation, Inc.*, 228 S.W.3d at 670 (O'Neill, J., concurring) (listing all applicable exceptions to enforcement).

### E. The Texas Supreme Court's recent pronouncements regarding forum-selection clauses do not supplant its decisions regarding venue-selection agreements.

Contrary to Great Lakes's arguments, we hold that the supreme court's recent decisions regarding forum-selection clauses, rejecting the "ouster" doctrine, do not supplant firmly established Texas law regarding the enforcement of *venue*-selection agreements that contravene a mandatory venue statute. First, the Texas Supreme Court was certainly aware of the holdings in *Branum, Leonard*, and *Fidelity* at the time it decided *In re AIU*, but it chose not to expressly overrule those cases. Chief Justice Thomas R. Phillips cited these cases in his dissent in *In re AIU* and carefully explained that these cases related to venue. *See In re AIU Ins. Co.*, 148 S.W.3d at 123 (Phillips, J., dissenting) (citing *Int'l Travelers' Ass'n*, 212 S.W. at 631 and *Fid. Union Life Ins.*, 477 S.W.2d at 536). The majority opinion in *AIU* did not reference these cases at all. *Id.* at 109–21.

Second, although the decision in *AIU* appears to supplant *one* of the reasons stated by the Texas Supreme Court for refusing enforcement of a venue selection agreement—the "ouster" doctrine—it does not address a separate, critical reason for why venue selection agreements in contra-

vention of mandatory venue statutes should not be enforced. *In re AIU* did not address the legislature's prerogative to set venue or the policy reasons for refusing to enforce a venue-selection clause in light of those legislative choices. *See id.* at 109–21. This legislative prerogative was relied on heavily in the cases discussed above where the Texas Supreme Court refused to enforce a venue-selection agreement contrary to a mandatory venue provision. *See* discussion, *supra* Part III.B.-C. Accordingly, after *In re AIU,* a highly significant reason to refuse enforcement of venue-selection clauses remains intact.

Finally, refusing to enforce a venue-selection agreement in contravention of a mandatory venue statute actually appears to be consistent with the Texas Supreme Court's recent pronouncements regarding forum-selection agreements and with the legislative venue scheme. Although forum-selection agreements are presumptively enforceable, there are exceptions. One of those exceptions occurs when enforcement of the forum-selection agreement contravenes a strong public policy of the forum. *In re AIU Ins. Co.,* 148 S.W.3d at 112 (citing *The Bremen,* 407 U.S. at 15, 92 S.Ct. 1907); *see also In re Autonation, Inc.,* 228 S.W.3d at 670 (O'Neill, J., concurring).

In *In re Autonation,* the supreme court's most recent pronouncement on forum-selection clauses, the court faced an argument that enforcement of a forum-selection clause in a covenant not to compete, selecting an out-of-state forum for a suit against a Texas resident, would violate Texas public policy. *In re Autonation, Inc.,* 228 S.W.3d at 668. The court rejected the argument. *Id.* at 668–69. The primary reason for its decision was that neither Texas courts nor the Texas Legislature had ever declared a fundamental Texas policy requiring every employment dispute with a Texas resident be litigated in Texas: "We recognized in *AIU* that even where Texas statutory provisions specify the application of Texas law, these provisions are irrelevant to the enforceability of a forum-selection clause where no statute 'requires suit to be brought or maintained in Texas.'" *Id.* at 669. In the absence of any recognized public policy, either through a judicial opinion or through a statute, the court would enforce the forum-selection agreement. *Id.*

In contrast to *Autonation,* the Texas legislature *has* enacted statutes that govern venue for suits brought in Texas State courts, expressing a legislative policy as to where a particular suit may be brought. TEX. CIV. PRAC. & REM.CODE ANN. Ch. 15 (Vernon 2002 & Supp.2006). The legislature has provided that in very limited circumstances, a party may contract around a mandatory venue statute. *Id.* Parties to a "major transaction," which must be evidenced by a written agreement and involve consideration with an aggregate stated value of at least one million dollars, may provide for venue in the contract. *Id.* § 15.020. In contrast, in other transactions of any amount where the contract provides that an obligation is to be performed in a particular county, the legislature has provided venue is *permissive* in that county. *Id.* § 15.035. Given these specific instructions from the legislature, we must assume that the legislature intended that any other type of venue-selection agreement would be unenforceable. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981) ("[E]very word excluded from a statute must also be presumed to have been excluded for a purpose. Only when it is necessary to give effect to the clear legislative intent can we insert additional words or requirements into a statutory provision."); *Wood v. Victoria Bank & Trust Co., N.A.,* 170 S.W.3d 885, 890 (Tex. App.-Corpus Christi 2005, pet. denied).

We cannot discern any clear legislative intent that would allow us to essentially add an exception to mandatory venue into chapter 15 of the civil practice and remedies code, and we decline to do so. *Cameron*, 618 S.W.2d at 540; *Wood*, 170 S.W.3d at 890.

Accordingly, we believe that the theoretical underpinnings for *In re AIU* and its progeny do not apply to venue-selection agreements, and the supreme court did not intend to supplant nearly a hundred years of Texas case law [11] or the legislative policies expressed in chapter 15 of the civil practice and remedies code. We implicitly recognized as much when, in 2006, we refused to enforce a venue-selection agreement that contravened a mandatory venue provision. *See Fleming v. Ahumada*, 193 S.W.3d 704, 712–13 (Tex.App.-Corpus Christi 2006, no pet.); *see also Liu*, 2007 WL 43816, at *2–3, 2007 Tex.App. LEXIS 81, at *6–7 (distinguishing between "forum" and "venue" and holding that venue-selection agreements are unenforceable). Although *Fleming* did not address the law regarding forum-selection agreements, it was properly decided, and we decline to overrule it. The trial court, therefore, did not abuse its discretion when it refused to enforce the venue-selection agreement between Ramos and Great Lakes.

## IV. CONCLUSION

Texas law prohibits parties from contracting away mandatory venue. The trial court properly refused to enforce such an agreement in this case. Because Great Lakes was required to show an abuse of discretion for which an appeal is inadequate, and we find no abuse of discretion, we must deny Great Lakes's petition for writ of mandamus. *Walker*, 827 S.W.2d at 837 (denying mandamus relief for failure to establish abuse of discretion); *In re Hamrick*, 979 S.W.2d 851, 853 (Tex.App.-Houston [14th Dist.] 1998, orig. proceeding).

---

11. Many cases prior to *In re AIU* followed *Branum, Leonard,* and *Fidelity. See, e.g., In re Calderon*, 96 S.W.3d 711, 716–17 (Tex.App.-Tyler 2003, orig. proceeding); *Bristol–Myers Squibb Co. v. Goldston*, 957 S.W.2d 671, 674 (Tex.App.-Fort Worth 1997, no writ); *Docta, Inc. v. Mediserve, Inc.*, 607 S.W.2d 301, 302 (Tex.Civ.App.-Waco 1980, no writ); *McGinn v. Fid. Union Life Ins. Co.*, 474 S.W.2d 320, 320–21 (Tex.Civ.App.-Texarkana 1971, writ ref'd n.r.e.); *Tilley v. Capital Nat'l Bank*, 367 S.W.2d 359, 361–62 (Tex.Civ.App.-Austin 1963, no writ); *Bexar County Mut. Ins. Co. v. Ward*, 245 S.W.2d 325, 326 (Tex.Civ.App.-Eastland 1952, no writ); *Gen. Motors Acceptance Corp. v. Hunsaker*, 50 S.W.2d 367, 367–68 (Tex.Civ.App.-Amarillo 1932, writ dism'd); *Pfeifer v. E.J. Hermann Sales Co.*, 43 S.W.2d 484, 485–86 (Tex.Civ.App.-San Antonio 1931, no writ). If the supreme court had intended to supplant this vast authority, it would have done so expressly.